# THE STATE ex rel. ALFRED VAUGHT, Collector of the Revenue, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

Division One, March 12, 1917.

1. **BILL OF EXCEPTIONS: Change in Judge.** A bill of exceptions agreed to by both parties, and signed by the circuit judge who tried the case, after the county in which the case was tried had been detached from his circuit and added to another, will be considered on appeal. [Refusing to follow State ex. rel. v. Flick, 179 Mo. App. 236.]

2. ———: **Circuit Judge: State Officer.** The office of circuit judge is a State and in no sense a local office, and the judge as such may exercise his judicial functions in proper cases in any county. His powers, in whatever county exercised, rest upon his election or appointment and qualification by his oath of office; and whenever in the performance of his official duties, he enters upon the trial of a case, he acts within the limits of his official authority, which continues until the duty is performed or he goes out of office. If he tried the case and is still circuit judge he can settle and approve the bill of exceptions, although the county in which the case was tried is, by legislative enactment, no longer a part of his circuit.

3. **COUNTY TAXES: Road Purposes.** The county court in counties in which the assessed valuation of properties is less than six millions, may levy fifty cents on the hundred dollars for county purposes, and set aside fifteen cents of it to improvement of roads; and it can in addition to that fifty cents, levy an additional tax not exceeding twenty-five cents to be used for road-and-bridge purposes but for no other purpose.

4. ———: ———: **Twenty-Five-Cent Levy: Divided Into Two: County Purposes.** The county court levied fifty cents on the hundred dollars' valuation for county purposes, and divided it into five funds, distributing fifteen cents to the fund "for the payment of all necessary expenses incurred in the building and repairing of roads and bridges." The further words of the levy were: "It is further ordered that a property road tax of twenty cents on each one hundred dollars valuation on all property made taxable by law for road purposes be levied and collected for the use and benefit of the respective road districts of the county, when collected to be placed to the credit of said road districts for the purposes specified in the statutes. It is further ordered that a property road-and-bridge tax of five cents on the hundred dollars' valuation

be levied on all property made taxable by law, and when collected to be placed to the credit of said Road-and-Bridge Fund as provided by law." *Held,* that the first appropriation of fifteen cents was made in pursuance of the statute as the proportion of the road fund to be derived from the general revenue arising from the maximum levy of fifty cents for county purposes; and the other two levies of twenty and five cents were made under the constitutional amendment of 1908 and Sec. 10482, R. S. 1909, and while no good reason is apparent why the aggregate levy of twenty-five cents should have been thus divided into two, they were both made for the one purpose contemplated by that constitutional amendment and both were legal, and the levy of twenty cents cannot be disposed of as a levy for "county purposes" under section 11 of article 10 of the Constitution.

5. ———: ———: ———: **Not Designated as Special Tax.** The constitutional amendment (Sec. 22, art. 10, Constitution) does not require the name by which the "special tax" of twenty-five cents for road purposes is authorized, to be specified as a part of the record order levying it. The fact that it is levied nominally "for road and bridge purposes" and that it is in excess of the tax authorized by section 11 of article 10 of the Constitution, fixes its status as a special tax, and limits its use when collected. It is only necessary that it should be levied separately from and "in addition to" the levy "authorized for county purposes" and that it should appear to be "for road and bridge purposes."

6. ———: ———: ———: **Use for Other Purposes: Agency Expending It.** The twenty-five cent road tax authorized by the constitutional amendment of 1908 cannot be used for any other purpose than for roads and bridges, but neither the amendment nor the statute designates the particular agency, among those lawfully charged with the duties to which the purpose pertains, by whom it is to be expended.

Appeal from Scotland Circuit Court—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*Thomas R. Morrow, George J. Mersereau, John H. Lathrop* and *J. D. M. Hamilton, Jr.,* for appellant.

The two-mill road tax as ordered by the county court of Scotland County was levied under Sec. 10481, R. S. 1909, and was unconstitutional for the reason that the fifty-cent limitation of section 11, article 10, of the Constitution, had been exhausted by the current ex-

pense tax, section 10481, Revised Statutes 1909, being within the limitation of section 11, article 10, of the Constitution. State ex rel. v. Railroad, 87 Mo. 236; Brooks v. Schultz, 178 Mo. 222; Arnold v. Hawkins, 95 Mo. 569; Secs. 10481, 10482, 11422, 1423 and 11769, R. S. 1909; Secs. 1, 11, 12 and 22, art. 10 Constitution.

*J. M. Jayne* and *H. V. Smoot* for respondent.

Respondent challenges the bill of exceptions filed by appellants, in this, that the bill of exceptions as filed was not and is not signed by the judge of the 37th Judicial Circuit of which Scotland County is and was at the time bill was signed a part, nor by the judge of the Scotland County Circuit Court, but was signed by Chas. D. Stewart, who at the time he signed the bill of exceptions was and now is judge of the First Judicial Circuit, which circuit is and was then composed of Adair, Knox and Lewis counties. Laws 1913, p. 216. True the bill of exceptions purports to have been signed on the 15th day of May, 1914, by Chas. D. Stewart, Judge of the Scotland County Circuit Court, which was more than one year after Scotland County was detached from the First Judicial Circuit and long after the appointment of Hon. N. M. Pettingill as judge of the 37th Judicial Circuit, of which Scotland County was a part. Respondent contends that the Hon. N. M. Pettingill was the proper party to sign same and not Judge Stewart, and that the signing by Hon. Chas. D. Stewart was without authority and void, thus rendering the paper presented as a bill of exceptions no bill of exceptions. State ex rel. v. Flick, 179 Mo. App. 236; Sec. 2032, R. S. 1909. Going out of office means going out of the judgeship of the court over which he presided, though judge of another. Raney v. Packing Co., 132 Mo. App. 327; Fenn v. Reber, 153 Mo. App. 219.

BROWN, C.—This is a suit for taxes amounting to $574.12, with penalties and attorneys' fees, in which the judgment was for the plaintiff. The defendant appeals.

The petition states that the taxes sued for were assessed and levied "for county purposes for the general road fund."

The defendant, after the ordinary general denial, answers as follows:

"Defendant further answering said petition states that the sum of $574.12 alleged as owing by this defendant to the county of Scotland and designated in plaintiff's petition as the 'General Road Fund' is obtained by an attempted levy of two mills per dollar on the right of way owned by this defendant in said Scotland County, Missouri; and that this tax levy apparently is made under authority of section 10481, Revised Statutes 1909, said provision being known as the 'General Road Tax.'

"Defendant further states that all taxes that may be levied by county courts are designated in article 10 of the Constitution of the State of Missouri; that no such tax as provided by said section 10481, Revised Statutes 1909, is anywhere authorized in said Constitution and that said levy of two mills on the dollar, as provided for in section 10481, is without authority and void because it is contrary to and violative of article 10 of the Constitution of the State.

"Defendant further states that the total valuation of taxable property in said Scotland County for the year 1912, is less than six million dollars, and that by reason thereof under the limitations of article 10, section 11, of the Constitution of the State, the amount of taxes that can be lawfully levied upon property in said county is five mills on the dollar, and defendant states that the attempted tax levy of two mills on the dollar for road purposes is in excess of the lawful rate of taxes in said Scotland County, and is therefore specifically a direct violation of section 11, article 10, of the Constitution of Missouri, and is for that reason without authority and void."

The plaintiff replies, among other things, as follows:

"Plaintiff for further reply states that said county court in addition to the amount they could levy under section 11 of article 10 of the Constitution saw proper to make a special levy, as provided by section 22 of said article of the Constitution of Missouri, and that the taxes sued for by plaintiff in his petition are the said taxes so levied and provided by said section 22 of article 10 of the Constitution, and was in force at the time of the levying of said taxes."

The order of the county court for Scotland County levying these taxes is as follows:

"In compliance with section —— of article ——, chapter ——, of the Revised Statutes of 1909 of the State of Missouri, it is ordered by the court that there be and is hereby levied on the assessed valuation of the railroads, telegraph and telephone property of the county for the year 1912, as adjusted and equalized by the State Board of Assessment and Equalization as shown by the certificate of the State Auditor for said year, the following taxes, to-wit: For state purposes, one and nine-tenths mills on each dollar valuation. For the purpose of paying the current expense of the county for the ensuing year to be known as the County Revenue Fund, there is levied five mills on each one dollar valuation to be apportioned as follows, to-wit: For Officers' Salary Fund, one and one-half mills. For Jury and Election Funds one-half of a mill. For Road-and-Bridge Fund, one and one-half mills. For Contingent Fund three-fourths of a mill. For the payment of interest on funding bonds as per order of the Scotland County Circuit Court at its February term, 1893, there is levied a tax of six mills on each one dollar valuation, to be known as the Bond Interest Fund. For the Special Road-and-Bridge Fund there shall be levied and collected one-half mill on each one dollar valuation. For the purposes estimated in the name prescribed by law there shall be levied and collected a tax of two mills on each one dollar valuation to be apportioned when collected to the several road districts as provided by law, to be known as the Road Tax Fund."

The case was tried to the court, Hon. Chas. D. Stewart, Judge of First Judicial Circuit, presiding, on May 17, 1913. Motions for new trial and in arrest were filed the same day and continued to the November term, when they were overruled and leave granted the defendant to file bill of exceptions during the following May term, at which, on May 15, 1914, it was signed by Judge Stewart and duly filed, being "approved and agreed to" by the plaintiff by writing under the signature.

The defendant contests the validity of the tax sued for on the ground that it exceeds the amount limited in section 11 of article 10 of the Constitution for county purposes and does not come within the authority granted by the amendment of 1908 embodied in section 22 of the same article. In support of its position it leans to some extent upon the form of the order of the county court making the levy, which was given in evidence, but not set out in the pleadings. The plaintiff challenges the bill of exceptions, because it is signed by Judge Stewart of the First Judicial Circuit before whom the cause was tried in that circuit, while Scotland County was a part of it, instead of being signed by Judge Pettingill who had been appointed judge of the new Thirty-seventh Judicial Circuit, to which that county had been attached.

**Bill of Exceptions: Change in Circuit.**

It will be seen that the point made is quite technical, the bill of exceptions having been signed by the judge who alone held in his own breast the proceedings, and being admitted to be true.

It is apparently conceded that before the enactment, in 1889, of the provisions of section 2032 of our present Revised Statutes, the judge who tried the cause was the only one competent to sign the bill, and that his death or retirement from office before signing it, would preclude the unsuccessful party to the judgment from a review of any matter of exception by appeal or writ of error. It was evidently to remedy this condition that the section was enacted. Its necessity flowed naturally

from those provisions of our code relaxing the common-law rule that exceptions must be written out and signed during the progress of the trial. This section provides: "In any case where the judge who heard the cause shall go out of office before signing the bill of exceptions, such bill, if agreed to be true by the parties to the action, or their attorneys, or shown to the judge to be correct, shall be signed by the succeeding or acting judge of the court where the case was heard." That this section was enacted to secure as effectually as possible the right of review of decisions of the trial courts is evident, and that its remedial provisions should be construed in harmony with that evident purpose goes without saying. It only remains to notice its application to the facts of this case.

The Constitution (Art. 6, sec. 24) provides that the State shall be divided into circuits, in each of which one circuit judge shall be elected and that whenever a circuit is abolished the office of the judge of such circuit shall cease. Section 29 of the same article is as follows: "If there be a vacancy in the office of judge of any circuit, or if the judge be sick, absent, or from any cause unable to hold any term or part of term of court, in any county in his circuit, such term or part of term of court may be held by a judge of any other circuit; and at the request of the judge of any circuit, any term of court or part of term in his circuit may be held by the judge of any other circuit, and in all such cases, or in any case where the judge cannot preside, the General Assembly shall make such additional provision for holding court as may be found necessary." We have quoted this section fully to call attention to the fact that the office of circuit judge is, by the terms of the Constitution which created it, a State and not in any sense a local office, and that the circuit and its courts are the judicial instruments of the State, and not of any particular locality. The judge is a judicial officer of the State and may exercise his functions as such in proper cases in any county. The circuit is simply the

territorial unit of his creation, and when it is abolished the office which depends upon its existence ceases (*Id.,* sec. 24), but the territorial unit of the *court* is the county.

We note particularly the clause in section twenty-nine of the same article which provides that at the request of the judge of any circuit any term of court or part of term in his circuit may be held by the judge of any circuit. Under this provision the request may originate in the caprice of the judge of the circuit in which the court is held, as well as in any other condition. In Riggs v. Owen, 120 Mo. 176, Dekalb County, which constituted a part of the Twelfth Judicial Circuit of which Hon. O. M. Spencer was judge, was attached to the Twenty-eighth Judicial Circuit, of which Hon. C. H. S. Goodman was judge. A cause which Judge Spencer had tried was pending in the DeKalb Circuit Court upon motion for a new trial, and while Judge Goodman "was present in court in apparent good health" Judge Spencer sat upon the bench and overruled it. When the motion was reached, Mr. Riggs, against whom the judgment had been rendered, objected on the following grounds: "First, because Judge Goodman was present in court in apparent good health; and, second, because Judge Spencer, as judge of the Twelfth Circuit, had no jurisdiction."

In sustaining the action of Judge Spencer this court in division said: "Judge Goodman was authorized to call Judge Spencer to hold this term or any part of it, and in the absence of any showing to the contrary we will presume that he did. [State v. Gamble, 108 Mo. 500.] It was most natural and proper that he should have done so, in order to close up the business which was then pending, especially to pass upon motions for new trial and prevent the unnecessary delay and cost of second trials. It is not for parties litigant to determine the condition of the judge's health, or his reasons for calling in another judge. The law has vested that power in him. [State v. Ulrich, 110 Mo. 350.]"

In State v. Gordon, 196 Mo. 185, the case was pend-
ing in the circuit court of St. Francois County in the
Twenty-seventh Judicial Circuit, of which Hon. Robert
A. Anthony was sole judge. An affidavit of prejudice
was filed against him and he called in Hon. Samuel
Davis, judge of the Fifteenth Judicial Circuit, to try
the case. The defendant was convicted at the November
term, 1904, motion for new trial was overruled at the
same term and the defendant given until February 16,
1905, to file bill of exceptions. This time was extended
until March 16, 1905, and again to April 15, 1905, both
orders being made by Judge Davis, who signed the bill
of exceptions and ordered it filed on April 12, 1912.
No judgment was entered upon the verdict, nor sen-
tence passed at the November term, 1904, at which the
conviction was had, but afterward, on February 21,
1906, at an adjourned November term, 1905, Judge
Davis, with the consent of Judge Killian, the successor
of Judge Anthony, as judge of the Twenty-seventh
Judicial Circuit, ordered a *nunc pro tunc* entry of judg-
ment and sentence as of November 25, 1904. On the
first Monday in January, 1905, Judge Killian had been
elected to succeed Judge Anthony at the November
election preceding, and Judge Davis had been elected
at the same time his own successor. It was held that
the judgment entered *nunc pro tunc* was a valid judg-
ment, and that the bill of exceptions had been properly
signed by Judge Davis, the court saying (p. 196): "It
may be conceded that if Judge Davis had not been re-
elected at the regular election in November, 1904, he
would have had no authority whatever to enter the *nunc
pro tunc* judgment and to pass sentence upon defendant,
as it was only in his capacity of judge of the circuit
court of the Fifteenth Judicial Circuit that he had such
authority; but as he continued, without intermission,
to be judge of that circuit, and his present or succeed-
ing term of office as judge of said circuit, for which
he had been duly elected, commissioned and qualified,
commenced immediately upon the expiration of the term
during which he presided at the trial of said case, there

was, therefore, no vacancy in said office, and, we are of opinion that he retained jurisdiction of the case." The same ruling was made in State v. McCarver, 194 Mo. 717. While Riggs v. Owen, supra, is, as far as we can see, founded upon a state of facts precisely similar to this, the same principle is involved in all. The same question now before us was decided by the St. Louis Court of Appeals in Patterson v. Yancey, 97 Mo. App. 681, which held that the judge who tried the case properly signed the bill of exceptions, and notwithstanding the fact that, between the overruling of the motion for a new trial and the signing and filing of the bill of exceptions, the county in which the cause was tried had been detached from his circuit.

All these decsions rest upon the principle that under our Constitution and statute the judge of the circuit court is a judicial officer of the State whose powers, in whatever county they may be exercised, rest upon his election and qualification by his oath of office, and that whenever, in the performance of his official duty, he enters upon the trial of a case, he acts within the limits of his official authority, which continues until the duty is performed or he goes out of office. This capacity results from the nature of the duty, and has always been recognized by this court. [Woolfolk v. Tate, 25 Mo. 597; Cocker v. Cocker, 56 Mo. 180.] The same necessity in which this rule is founded afforded the incentive for the enactment of the law we are now considering. While, at the time of its enactment in 1889, the common law, through the official capacity and powers of the trial judge, carefully preserved to the litigant the means of preserving for review the rulings incident to the trial, it was possible these might be foreclosed by the cessation of the office of the trial judge before they had been properly preserved and recorded. The statute (R. S. 1909, sec. 2032) carefully covered this field, and its remedial words are no broader than its remedial purpose. It covers those cases only "where the judge who heard the cause shall go out of office before signing the bill of exceptions." To disregard

this language and substitute language of our own, re-
quires a more powerful incentive than to embarrass the
right of review which it was designed to secure.

We are aware that the Kansas City Court of Ap-
peals in State ex rel. v. Flick, 179 Mo. App. 236, takes
a different view of this question, but are not satisfied
with its reasoning, and prefer to adhere to the doctrine
of this court and that of the St. Louis Court of Appeals
in the cases cited. We think that this bill of exceptions
is properly before the court, and that it is. our duty to
consider the effect of the levy, which is the real subject
of the controversy.

II. We are not favored with the views of the re-
spondent upon the merits, either in brief or oral argu-
ment. It has preferred to put all its eggs in the basket
**Rate of** containing its objections to the bill of excep-
**Taxation.** tions, and let us struggle as best we can with
the merits, aided only by the exhaustive arguments,
both printed and oral, of the appellant. The question
is one of public importance, affecting the power of tax-
ation for all purposes relating to roads and bridges.

The total valuation, for taxation, of the property
of Scotland County is less than $6,000,000, and section
eleven of article ten of the State Constitution limits
the annual rate of taxation for county purposes to fifty
cents on each one hundred dollars of such valuation.
That the establishment, construction and maintenance
of roads and bridges in the county, except within the
limits of municipal corporations charged with those
duties, belongs in the category of "county purposes" is
not denied.

Acting under the authority of statutes passed in
pursuance of the constitutional provision referred to,
the county court of Scotland County levied upon the
property of the county at the May term, 1912, taxes
for county purposes to the full amount of fifty cents on
each one hundred dollars, and, in conformity with the
provisions of section 11423, appropriated, apportioned
and subdivided the fund so levied as follows: (1) for

the care of paupers and insane, five cents on each one hundred dollars; (2) for the payment of all necessary expenses incurred in the building and repairing of roads and bridges, fifteen cents on each one hundred dollars; (3) for salaries, fifteen cents; (4) for the payment of fees of jurors, judges and clerks of election and witnesses before the grand jury, seven and one-half cents; and (5) for the payment of current expenses of the county not otherwise provided for designated as the contingent fund, seven and one-half cents. The order then provides as follows: "It is further ordered that a property road tax of two mills on each one dollar valuation as shown by the assessor's book for the year 1912, on all property made taxable by law for road purposes, be levied and collected for the use and benefit of the respective road districts of the county, when collected to be placed to the credit of said road districts for the purpose specified in the statutes in such cases made and provided. It is further ordered that a property road-and-bridge tax of one-half of one mill on each one dollar valuation as shown by the assessor's books for the year 1912 be levied on all property made taxable by law, and when collected to be placed to the credit of said Road-and-Bridge Fund as provided by law." The remainder of the order, refers to the levy of money for the payment of interest and does not come within the constitutional limitation we have mentioned. It will be observed that the several amounts so apportioned, omitting the two items last mentioned, amount to the constitutional limit of fifty cents on each one hundred dollars, while the two additional items amount to twenty-five cents on each one hundred dollars. It is the amount collected from the two-mill levy which is the subject of this suit. We have set out this apportionment in full as spread upon the record of the county court in the statement which precedes this opinion.

The appellant states its position as follows:

"The two-mill road tax as ordered by the county court of Scotland County was levied under section 10481,

Revised Statutes 1909, and was unconstitutional for the reason that the fifty-cent limitation of section 11, article 10, of the Missouri Constitution had been exhausted by the current expense tax, section 10481, Revised Statutes 1909, being within the limitation of section 11, article 10 of the Constitution.''

III.   In 1908 an amendment to the Constitution was adopted and added to article 10 as section 22, which is as follows:

''In addition to taxes authorized to be levied for county purposes under and by virtue of section 11,
Special Road and Bridge Tax. article 10, of the Constitution of this State, the county court in the several counties of this State not under township organization, and the township board of directors in the several counties under township organization, may, in their discretion, levy and collect, in the same manner as state and county taxes are collected, a special tax not exceeding twenty-five cents on each $100 valuation, to be used for road and bridge purposes, but for no other purpose whatever; and the power hereby given said county courts and township boards is declared to be a discretionary power.''

It is upon this amendment and the acts subsequently passed and incorporated in the Revised Statutes of 1909 that the validity of the tax in controversy is asserted and must depend.

No amendment was made to section 9283, Revised Statutes 1899, which is contained in the Revised Statutes of 1909 as section 11423, and was substantially followed in the apportionment to which we have already referred down to the last paragraph, in which the twenty-cent appropriation was made.   This paragraph and all succeeding matter was added by the county court to the statutory form as it had existed for many years.   The Act of 1909 (Sec. 10481, R. S. 1909) is as follows:

''The county court in the several counties of this State, at the May term thereof in each year, shall levy upon all real and personal property made taxable by law, outside of incorporated cities, towns and villages,

a tax of not more than twenty cents on the one hundred dollars valuation as a road tax, which levy shall be collected and paid by the collector into the county treasury as other revenue, and the county treasurer shall place the same to the credit of the road district from which said tax was collected, and shall pay the same to the overseer of said district on the warrants of the county court. The money derived from such road tax shall be expended by the respective road overseers in purchasing necessary tools with which to work the roads in their districts, in purchasing material to build or repair bridges and culverts, and for such other expenditures as may be necessary to keep the roads in their districts in good order: *Provided,* that the construction of all bridges and culverts shall be under the direction or supervision of the county highway engineer."

The next succeeding section (10482) is as follows:

"In addition to the levy hereinbefore authorized to be made, the county courts of the several counties of this State, other than those under township organization, may, in their discretion, levy and collect, in the same manner as state and county taxes are collected, a special tax not exceeding twenty-five cents on each one hundred dollars valuation, to be used for road and bridge purposes, but for no other purpose whatever, and the same shall be known and designated as 'the Special Road-and-Bridge Fund' of the county."

Again, in section 11769, evidently referring to the same subject, it is provided that "the county court of any county in the State which is not under township organization, . . . may, annually in their discretion, at the same time and in the same manner as taxes are now required by law to be levied for county purposes, levy an annual tax in addition to those now authorized by law in any amount not exceeding twenty-five cents on each one hundred dollars' valuation on all property subject to taxation in such county . . . to be known as a Special Road-and-Bridge Tax."

It is upon the interpretation of these three sections as applied to the levy before us that this case is to be determined.

It will be seen that there is no question as to the authority of the county court to levy the entire amount. Before the amendment of 1908 all road taxes were included in the levy authorized by the Constitution to be made for "county purposes." The form fixed by statute for the apportionment of this levy expressly authorizes the appropriation from the amount so raised of "a sum sufficient for the payment of all necessary expenses for the building of bridges and repairing of roads, including pay of road overseers." The constitutional amendment permits the twenty-five cent levy *"in addition to taxes authorized to be levied for county purposes under and by virtue of section 11,"* and the statutes enacted in pursuance of it contain the same authority. The amendment simply increases the amount which the county was authorized to levy under the provisions of section 11 from fifty cents to seventy-five cents on each one hundred dollars valuation, with the limitation that the entire additional levy must be made and used for road and bridge purposes and for no other purpose whatever. It imposes no *duty* upon the county court to appropriate any part of the levy for county purposes under section 11 to such uses, but left the *power* undisturbed. Even if the county court previously had the power, to transfer the road-and-bridge fund created under the provisions of section 11423 of the Revised Statutes of 1909 (Decker v. Diemer, 229 Mo. 296), *this* fund is to be kept sacred to the purpose for which it was levied. The question here is not whether the county court had power to levy this disputed tax (for the amendment places that beyond question), but whether it did it; that is to say, whether the words used in making the levy were apt and sufficient under the constitutional amendment and statutes enacted to carry it into effect.

IV. Section 11423 providing for the subdivision and apportionment of the levy for county purposes was enacted in 1879, and has ever since been co-existent

with section 11 of article 10 of the Constitution, in pursuance of which it was enacted. It was designed for the distribution of the revenue for "county purposes" authorized by that section of the Constitution, and specified five funds to which only it can be appropriation by the county court. One of the five is the fund referred to in section 10481 of the present revision, and was limited to twenty cents on the one hundred dollars valuation. The county court levied the full amount of fifty cents of the one hundred dollars' valuation authorized by the Constitution and section 11422 of the Revised Statutes, and then proceeded to divide it into the five funds authorized by section 11423; distributing fifteen cents on the one hundred dollars of valuation to the fund "for the payment of all necessary expenses incurred in the building and repairing of roads and bridges." That this appropriation was made in pursuance of the statute as the proportion of the road fund to be derived from the general revenue resulting from the maximum levy of fifty cents for "county purposes" is plainly expressed in the order itself and does not admit of question. So far as the amount of road and bridge taxes to be appropriated from that particular levy was concerned it exhausted the authority of the court, because in connection with the four other appropriations made at the same time it exhausted the amount of the fifty cents constitutional levy. There was nothing left for further distribution. The court then proceeded to make another and additional levy in these words: "It is further ordered that a property road tax of two mills on each one dollar valuation as shown by the assessor's books for the year 1912 on all property made taxable by law for road purposes be levied and collected for the use and benefit of the respective road districts of the county, when collected to be placed to the credit of said road districts for the purpose specified in the statutes in such cases made and provided. It is further ordered that a property road-and-bridge tax of one-half of one mill on each one dollar valuation as shown by the assessor's books for the year 1912 be

*Order Levying Tax.*

levied on all property made taxable by law, and when collected to be placed to the credit of said road and bridge fund as provided by law.''

That the last two levies were intended to be made under the authority granted by section 22 of the Constitution and section 10482, Revised Statutes 1909, necessarily follows from the fact that the previous levy of fifteen cents embodied in the second clause of the apportionment of fifty cents for county purposes under the provisions of section 11 of article 10 of the Constitution, and section 10481 enacted in pursuance thereof, exhausted the power of the county court under the law as it stood before the amendment. The two levies of twenty cents and five cents last mentioned, amounting to twenty-five cents on each one hundred dollars of valuation, must therefore stand upon the amendment of 1908 and section 10482 or not at all.

The defendant paid the last of these additional levies amounting to five cents on the one hundred dollars and only disputes the twenty cent levy. On what theory this was done is not clear to us; for it was certainly void if its validity must depend on the authority of section 11 of article 10 of the Constitution, being in excess of the fifty cent limit. If made under section 22, article 10, and section 10482 it comes within the amount of the additional levy of twenty-five cents so authorized. It is therefore evident that the county court in making each of them, attempted to act under the amendment and section 10482. The only question is whether it failed to express its intention.

V. The fact that the twenty-cent levy only is in dispute, suggests that it might have been thought that the additional tax of twenty-five cents on each one hundred dollars of valuation must necessarily be levied at a single stroke of the ax, and that the payment of either would therefore discharge the liability for both. We think this too technical for serious consideration, and that the real question is whether it comes within the authority of the amendment of 1908; and that upon this record we

Division
of Special
Road Tax.

have only to consider the validity of the twenty-cent levy from that standpoint.

VI.   Section 22 of article 10 of the Constitution, which we have already quoted, provides that in addition

*Diverting Road Tax to County Purposes.*

to taxes authorized to be levied for county purposes under and by virtue of section 11, article 10, the county court may in its discretion levy and collect a special tax not to exceed twenty-five cents on the one hundred dollars of valuation, to be used for road and bridge purposes, but for no other purpose whatever. This provision uses no other term of description than "special tax." The word special only means relating to a particular thing or class of things, and is explained fully by the clause requiring it to be used for road and bridge purposes, but for no other purpose whatever. The necessity for its use in this connection is made plain in Decker v. Diemer, supra. This court *In Banc* said (p. 336) : "The bald question then is : May a county court transfer a surplus and divert it from a fund having a designated and given purpose, to another legitimate county purpose, by force and reason of the satisfaction of the original use or purpose? We answer that question in the affirmative." That portion of the levy authorized by the Constitution for county purposes which had been set apart for roads and bridges *might* be diverted from such purpose, and the people thought best to and did confine the additional levy to use for the special purpose for which they authorized it and no other.   Thus any road-and-bridge tax in excess of the amount allowed by the Constitution for county purposes must be held sacred to the use for which it was authorized.   The fact that it is levied nominally "for road-and-bridge purposes" and that it is in excess of the tax authorized by section 11, article 10, of the Constitution, fixes its special status and limits its use.   The amendment does not purport to prescribe a name by which it must be called upon the record, but only to designate the use to which it shall be limited when collected.   It is only necessary that it should be made

separately from and *in addition to* the levy "authorized for county purposes," and that it should appear to be "for road-and-bridge purposes." All else is taken care of by the law which guards the legislative intent when once expressed. The same words are transferred from the Constitution to section 10482 of the present Revised Statutes, and there is nothing in the act in which they occur that suggests a different interpretation. There is nothing in either Constitution or statute which suggests the intention that it be expended through any particular agency among those lawfully charged with the duties to which its purpose pertains, or requiring that it be done in a single clause of the order making the levy or in an undivided amount. This feature was recently discussed and determined by us in State ex rel. v. Burton, 266 Mo. 711.

The judgment of the circuit court is sustained. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.