**ST. LOUIS COUNTY, Missouri,
Plaintiff-Respondent,**

v.

**UNIVERSITY CITY et al., Defendants-
Appellants,**

**The City of St. Ann, Intervenor-Defendant-
Appellant,**

**St. Louis County Municipal League,
Amicus Curiae.**

**No. 57998.**

Supreme Court of Missouri,
En Banc.

March 12, 1973.

George F. Gunn, Jr., St. Louis County Counselor, Thomas W. Wehrle, Deputy County Counselor, Clayton, for respondent.

Robert C. Jones, Clayton, for City of Webster Groves.

Gregory M. Sheehan, Jr., University City, for University City.

A. E. Nick, Ferguson, for City of Ferguson.

V. Jack Muehlenkamp, Dellwood, for City of Florissant.

Edgar G. Boedeker, Clayton, for City of Clayton.

Robert E. Murray, Crestwood, for City of Crestwood.

Donald U. Biemdiek, St. Louis, for City of Richmond Heights.

William R. Dorsey, Clayton, for City of St. Ann.

Robert C. Jones, Ziercher, Tzinberg, Human & Michenfelder, Clayton, for St. Louis County Municipal League, amici curiae.

Robert E. Staed, Kappel, Neill, Staed & Wolff, St. Louis, for City of Kirkwood, amici curiae.

William R. Dorsey, Clayton, for City of St. Ann, intervenor-appellant.

MORGAN, Judge.

In a proceeding for declaratory judgment, St. Louis County requested the trial court to declare the rights of the county, and the ninety-six municipal corporations lying wholly or partially within said county, to the tax funds realized from the special road and bridge tax levied against property located in said county for the year 1971. (Mo.Const. Art. X, § 12(a); § 137.555, RSMo 1969.) The uncertainty stemmed from the adoption of House Bill No. 306 by the 76th General Assembly at its first session in 1971, which, in so far as of interest here, changed the percentage of revenue to which the county and such municipalities were entitled. The trial court determined that the new method of distribution called for by House Bill No. 306 (now Section 137.558, RSMo 1969) did not apply to the proceeds of such tax for the year 1971. Defendants have appealed. We affirm.

The basic facts, to which the parties agree, are as follows: (1) That plaintiff is a county of the first class, operating under a charter form of government pursuant to the provisions of Article VI, Section 18, of the 1945 Missouri Constitution, and that defendants are municipal corporations situated within St. Louis County, and are fairly representative of the ninety-six (96) municipal corporations lying wholly or partially within the county and adequately and fairly represent the whole class of municipalities that receive funds from the county's special road and bridge tax that is levied upon property situated within the corporate limits of each of the municipalities; (2) That under the provisions of Section 137.558 (as originally enacted in 1965 and before amendment by House Bill No. 306), defendants, and every other city lying wholly or partially within St. Louis County, were entitled to a refund from the county's special road and bridge tax of *50%* of the amount accruing to the county from the first 18 cents per $100.00 assessed valuation of the tax levied upon property situated within the limits of any such city; (3) That the 76th General Assembly, at the session which ended on June 30, 1971, enacted House Bill No. 306, which amended Section 137.558 to provide that the county would refund to said cities *100%* of the amount accruing to the county from the first 18 cents per $100.00 assessed valuation by virtue of said tax; and (4) That House Bill No. 306 became part of the statutory law of this state on September 29, 1971, by virtue of Sections 20a and 29 of Article III of the 1945 Missouri Constitution.

In addition, the record reflects that the county, in compliance with existing laws, did approve its budget for the year 1971, and levy the road and bridge tax, now in dispute, for the year 1971 during the month of December, 1970.

Several briefs have been submitted on behalf of the different municipalities, and each tends to emphasize a different argument why the trial court erred. However, they may be summarized fairly as follows: (1) That House Bill No. 306 contained neither an emergency clause nor an effective date in the future, and it became law

on September 29, 1971; (2) That the statutory language refers to taxes "accruing" and would be applicable to those 1971 taxes then in the "process of maturing"; (3) That the trial court ruling, in effect, called for the county ordinances (those adopted in December, 1970, setting the 1971 budget and levying the questioned tax) to supersede the legislative enactment found in House Bill No. 306; (4) That the county did not rely on the previous method of distribution while approving the budget for 1971; and, (5) That the trial court erred in concluding that changing the method of distribution, in September of 1971, of taxes levied prior thereto would be violative of the restrictions against retroactive laws.

In contrast thereto, the county takes an opposite approach to each argument noted.

Since we believe that the law controlling disposition of this case is well established, this opinion need not be extended by detailed consideration of the validity of each and every reason given by the trial court for its ruling.

■ First, legislative action by the General Assembly in this taxing area is generally controlling. As said in Padberg v. Roos, (Mo. banc 1966) 404 S.W.2d 161 at l.c. 171: "A county or a city, charter or otherwise, is *imperium in imperio,* that is, a government within a government. The people of a county or city, as such, are not sovereign. A non-charter county or city has the powers conferred on it by the Constitution and statutes of the state. A charter does not transform a county or city into a government apart from and superior to the state." More specifically, in a case actually involving a road and bridge tax, State v. Burton, 266 Mo. 711, 182 S.W. 746, l.c. 748–749 (1916), this court concluded that: "The legislative power to tax being inherent, the creation of agencies or instrumentalities for the levy, collection, and disbursement of such taxes follows as a necessary consequence, and hence the right of the Legislature to enact a law delegating in this case the disbursement of

the taxes collected to a board of commissioners of a special road district is not an improper exercise of such power." See also State v. Atchison, T. & S. F. Ry. Co., 270 Mo. 251, 192 S.W. 990 (1917), and State v. Pemiscot Land & Cooperage Co., 317 Mo. 41, 295 S.W. 78 (banc 1927). "Subject to constitutional restrictions, the legislature has full power and control over the disposition of taxes." 85 C.J.S. Taxation § 1057. As was said in State ex rel. St. Louis Police Commissioners v. St. Louis County Court, 34 Mo. 546, at l.c. 570 (1864): "Its [General Assembly's] determination and direction may operate unwisely, harshly and unjustly, but that is no argument against its power to direct." The latter case involved a legislative enactment calling for the county to be "chargeable with one-fourth of the whole expense of the police force of said city of St. Louis for the year 1864, and for each year thereafter . . . . " The act in question was enacted and became effective in 1864, and it was held to apply to that current year. However, that case involved express language specifying the time county funds were to be affected; and, we are left with the question, over and above the legislative power to act, as to what tax revenues were to be subjected to the new percentage of distribution established by House Bill No. 306.

■ What was the intent of the lawmakers? As a general rule " . . . statutes are construed to operate prospectively unless the legislative intent that they be given retrospective or retroactive operation *clearly appears from the express language of the acts, or by necessary or unavoidable implication."* State v. Jensen, 363 S.W.2d 666, 670 (Mo. banc 1963.) See also Green City v. Martin, 237 Mo. 474, 141 S.W. 879 (banc 1911), which involved the same road and bridge tax, wherein this court, at l.c. 882 [3], expressed a strong reluctance to apply a new enactment to the current year (1909) absent express "legislative sanction."

At the time House Bill No. 306 was passed, the assessments against property located in the county had been made and the rate of tax thereon had been levied for the year 1971. Section 137.075, RSMo 1969, provides: "Every person owning or holding real property or tangible personal property on the first day of January, including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year." Nothing remained but the collection of the tax proceeds later in the year. Did the General Assembly intend to change the recipient of such funds for the year 1971? We think not. The net effect of such a change, in the middle of the taxing process, would be to repeal the questioned tax in so far as the county is concerned and to enact a new tax for the benefit of the municipalities. We have noted the general rule, suggested by defendants, as announced in 16A, C.J.S. Constitutional Law § 417 (Laws impairing state or municipal rights) p. 106, that: "As long as private rights are not infringed, the state may constitutionally pass retrospective laws waiving or impairing its own rights, or those of its instrumental subdivisions or of the public generally . . . ." However, in this case we need not consider the rule or possible limitations placed thereon by this court in Green City v. Martin, supra, for there is no legislative "sanction", express or implied, that there was an intent to pass a law, retroactive in effect, by the enactment of House Bill No. 306.

The county submits that it must be able to estimate future revenue from taxation in order to budget for any forthcoming year. Such an obvious truth would be applicable to any governmental unit, and we do not believe we should place the General Assembly in the position of having disrupted such an orderly procedure absent an expressed or necessarily implied intent to do so. We are further persuaded by the provisions of Section 50.060, RSMo 1969, which, in part, authorizes the county to borrow ". . . in anticipation of the collection of taxes and revenues for the current fiscal year. The amount of such loans shall at no time exceed ninety per cent of the estimated collectible taxes and revenues for the year yet uncollected." Had the General Assembly intended to undermine the procedure called for by the borrowing authority noted, we believe it would have said so. In passing, an interesting question could be posed as to whether or not Section 50.060 makes the rule quoted from C.J.S., supra, reference a liberality toward retroactive laws which affect only governmental units, inapplicable in this state. For instance, could a lender under the statute claim that its security (tax revenues) constituted a vested right even though anticipated revenue might not be considered as such in favor of the county?

We can not attach the same significance to the statutory use of the word "accruing" (taxes) as do the cities involved. The same word was used in the statute before and after the changed percentage of distribution, and it was merely descriptive of any current tax obligation becoming payable. In addition, we need not consider any alleged trial errors in connection with the county's effort to show it had relied on the revenues in question while preparing its budget for the year 1971.

In view of the established rule of statutory construction that new enactments, and particularly those pertaining to taxation, are to be given a prospective application, we are convinced, absent an express or clearly implied sanction otherwise, that the General Assembly intended for House Bill No. 306 (now Section 137.558 as amended) to apply to said tax that might be levied for the year 1972 and thereafter.

The judgment is affirmed.

All concur except SEILER, J., who concurs in result.