1202

New Franklin School District No. 28, Howard County, Missouri et al., Plaintiffs-Respondents, v. G. H. Bates, Director of Revenue et al., Defendants-Appellants, No. 41308—225 S. W. (2d) 769.

Division One, January 9, 1950.

*J. E. Taylor*, Attorney General, *Will F. Berry, Jr.,* and *Robert R. Welborn*, Assistant Attorneys General, for appellants.

*Paul M. Peterson* and *William H. Becker* for respondents New Franklin School Dist. No. 28, F. N. McCulley, J. B. Settle, Sr., W. S. Alsop, D. E. Chester, R. D. Ballew and F. E. Biesemeyer; *Clark, Boggs, Peterson & Becker* of counsel.

1204

*Emmet T. Carter* and *Gerald K. Presberg* for intervenor-respondent Board of Education of City of St. Louis.

*Alva F. Lindsay,* for .intervenor-respondent School District of St. Joseph.

*Jack O. Knehans* and *Oscar A. Knehans* for intervenor-respondent Cape Girardeau School District No. 63 of Cape Girardeau, Missouri.

*Herbert C. Funke* for intervenor-respondent The School District of Maplewood-Richmond Heights of St. Louis County, Missouri.

DALTON, J.—This is an action for a declaratory judgment to determine the disposition of a particular fund in the custody and control of the defendants. The trial court entered a declaratory judgment to the effect that the fund constituted "a penalty, forfeiture and fine collected for the breach of the penal laws of this state"; that its disposition was controlled by the provisions of Sec. 7 of Art. IX of the Constitution of Missouri 1945; and that defendants were under a legal duty to pay the fund into the State Public School Moneys Fund and to distribute it in accordance with the laws governing the distribution of that fund. Defendants have appealed.

The fund in question, amounting to $2,090,000.00, was paid to the clerk of this court by certain insurance companies pursuant to a judgment entered by this Court on December 30, 1946. State on inf. Taylor v. American Ins. Co. (En Banc), 355 Mo. 1053, 200 S. W. (2d) 1. The amount received was paid to the State Treasurer on April 28, 1947, and was by him placed to the credit of the General Revenue Fund of the State of Missouri in accordance with an opinion furnished by the Attorney General.

Appellants assign error on the court's action in overruling their motion to dismiss the petition and in holding the disposition of the fund is governed by Sec. 7 of Art. IX, supra. Appellants contend that the first amended petition on which the cause was tried failed to show that plaintiffs-respondents had an interest in and to the fund; and that the disposition of the fund is not controlled by either Sec. 3 or Sec. 7 of Art. IX, Constitution of Missouri, 1945. Both contentions are based upon appellants' construction of Secs. 3 and 7 of Art. IX, supra.

By their answer, appellants prayed the court to "order and adjudge that the fund in question is properly held by them for the benefit of the general revenue fund of the State of Missouri subject to appropriation therefrom by the General Assembly for general public uses." Appellants concede that "this court should render a judgment declaratory of all questions raised in the trial court." Tietjens v. City of St. Louis (En Banc), 359 Mo. 439, 222 S. W. (2d) 70.

Section 7 Art. IX, supra, in part, provides: ". . . All interest accruing from investment of the county school fund, the clear proceeds of all penalties, forfeitures and fines collected hereafter for any breach of the penal laws of the State, the net proceeds from the sale of estrays, and all other moneys coming into said funds shall be distributed annually to the schools of the several counties according to law."

Appellants contend that said provision merely directs the annual distribution of certain funds to the schools of the several counties according to law; that the section is "directed to the accumulation and handling of funds in the various counties and townships of the state"; that it does not relate to the public school funds of the state or to funds under the control of or handled by any state officer; that the "penalties, forfeitures and fines" referred to are those arising from "causes and actions directly and specifically localized within the several counties" and not to those of State-wide concern, such as are originated by the Attorney General in his capacity as representative of the State; and that the sum in question, even if a penalty, forfeiture and fine, was not collected for a breach of the penal laws of the State. In view of the conclusions we have reached, it will only be necessary to consider the last contention.

Respondents offered in evidence the pleadings and judgment in the case of State on inf. Taylor v. American Ins. Co., supra, the cause in which the fund was collected. There is no dispute as to the type and kind of action. It was in the nature of quo warranto and the issues presented clearly appear from the opening paragraphs of the opinion of this court. The court found that "the said respondents, and each of them, did enter into a conspiracy to cheat and defraud their policyholders and the State of Missouri, and did bribe the Superintendent of Insurance of the State of Missouri to com-

promise and settle certain litigation effecting insurance rates in Missouri, and to recover certain impounded funds in rate litigation and to approve a new schedule of insurance rates, all as charged in the information filed; (and) that said acts of the respondents as set out constitute an abuse and misuse of their corporate franchises to do business in this State." It was considered and adjudged by the court that each of the respondents "for such abuse and misuse of [its] corporate franchise" should pay as a penalty a fine in the sum therein specified. (200 S. W. (2d) 1, 49 et seq.).

The action was instituted by the Attorney General by virtue of his office, upon his own information, in the exercise of his common law powers. State on inf. Taylor v. American Ins. Co., supra; State ex inf. Walker v. Equitable Loan and Inv. Ass'n., 142 Mo. 325, 335-338, 41 S. W. 916; State ex inf. McAllister ex rel. Manion v. Albany Drainage Dist., 290 Mo. 33, 56, 234 S. W. 339. It was a civil suit, not a criminal proceeding. State on inf. Taylor v. American Ins. Co., supra (200 S. W. (2d) 1, 39); State ex rel. Atty. Gen. v. Vail, 53 Mo. 97, 107; State ex rel. Norton v. Lupton, 64 Mo. 415, 417; 44 Am. Jur. 92, Quo. Warranto, Sec. 7. The respondents therein were not entitled to a jury trial. State on inf. McKittrick v. Williams, 346 Mo. 1003, 144 S. W. (2d) 98, 105. The statutes of limitation applicable to civil actions alone applied. State ex inf. Major v. Arkansas Lbr. Co., 260 Mo. 212, 293, 169 S. W. 145; State on inf. Taylor v. American Ins. Co., supra.

The action was essentially based upon a breach of the implied contract of each of the several respondent corporations with the State. The nature of the action was fully discussed and determined in the opinion of this court and authorities were cited. State on inf. Taylor v. American Ins. Co., supra (200 S. W. (2d) 1, 38-42); State ex rel. Walker v. Equitable Loan and Inv. Ass'n., supra (142 Mo. 325, 336).

In State ex inf. Hadley v. Delmar Jockey Club, 200 Mo. 34, 70, 98 S. W. 539, the court pointed out that "these proceedings are no longer recognized as criminal proceedings and have not been so recognized since the early days of the common law, but we have continually imposed what are called fines, a term no doubt coming down from the time when the proceeding was looked upon as a criminal proceeding. . . . The gist of each (misuser and usurpation) in quo warranto is the willful violation of the rights of the State under the implied contract, and not the violation of some criminal law, for we do not try criminal cases and affix criminal punishments in quo warranto proceedings."

In the case of State ex inf. Hadley v. Standard Oil Co., 218 Mo. 1, 353, 116 S. W. 902, the court said: "In other words, the laws of the State authorize and direct the Attorney-General to institute civil proceedings by information in the nature of quo warranto against any corporation to annul its charter and forfeit its franchises when-

ever it has by misuser, nonuser or usurpation of power so conducted itself as to violate the laws of its being or the criminal laws of the State. If, upon trial, the corporation is found guilty, a decree of forfeiture must go, and the court has the power, in addition, to impose penalties for such violations of the laws as it may deem proper. This, however, does not proceed upon the theory that the corporation has been guilty of a crime and that it is being punished therefor; but upon the idea that there is an implied or tacit agreement on the part of every corporation, by accepting its charter and corporate franchises, that it will perform its obligations and discharge all its duties to the public, and that by failing to do so it commits an act of forfeiture which may be enforced by the State in the manner before suggested. . . . In addition ▉▉▉▉ thereto the Legislature has the unquestionable power and authority to declare the acts which will work a forfeiture of the charter shall also constitute a crime, and subject the corporation and its agents and servants to punishment under the criminal laws of the State.''

When the case of State ex inf. Hadley v. Standard Oil Co., supra, reached the Supreme Court of the United States (Standard Oil Co. v. Missouri, 224 U. S. 270, 285, 288, 56 L. Ed. 760) the court said: ''So that, whatever may be the rule elsewhere, in Missouri a corporation may in quo warranto be subjected to a money judgment—whether called a fine as punishment,—or damages for its implied contract not to violate its franchise. . . . Nor, from a Federal standpoint, is there any invalidity in the judgment because there was no statute fixing a maximum penalty, no rule for measuring damages, and no hearing on a subject which it is claimed was not referred to in the Information. At common law, and under many English statutes, the amount of the fine to be imposed in criminal cases was not fixed. This was true of the statute of 9 Ann. chapter 20, which, in quo warranto cases, made it 'lawful as well to give judgment of ouster as to fine for usurping or unlawfully exercising any office or franchise.' The amount to be paid in all such cases was left to the discretion of the court, 'regulated by the provisions of Magna Charta and the Bill of Rights that excessive fines ought not to be demanded.' 4 Black. Comm. 378. Or, considering the fine as in the nature of a civil penalty, the case is within the principle which permits the recovery of punitive damages. They are not compensatory, nor is the amount measured by rule. . . . It is true that, except in cases for the breach of a contract of marriage, punitive damages have been allowed only in actions for torts. But no Federal question arises on a ruling that, in Missouri, punitive damages may be recovered from a corporation for the violation of its implied contract when, as alleged in the Information, the defendants 'wilfully and wantonly misused their licenses.' . . . But proceedings by Information in the nature of quo warranto differ in form and consequence from a prosecution by indictment for

violation of a criminal statute. In the one the State proceeds for a violation of the company's private contract—in the other it prosecutes for a violation of public law. The corporation may be deprived of its franchise for nonuser—a mere failure to act. . . . If, however, the act of misuser is not only ultra vires but criminal, there is no merger of the civil liability in the criminal offense. Separate proceedings may be instituted—one to secure the civil judgment, and the other to enforce the criminal law. Both cases may involve a consideration of the same facts; and evidence warranting a judgment of ouster may be sufficient to sustain a conviction for crime. A judgment may in one case sometimes be a bar to the other; but neither remedy is exclusive. The double liability, in civil and criminal proceedings, finds its counterpart in many instances, as, for example, where an attorney is disbarred or ousted of his right to practice in the court because of conduct for which he may likewise be prosecuted and fined." And, see, State ex inf. McKittrick v. Wymore, 345 Mo. 169, 132 S. W. (2d) 979, 982-983.

In support of the judgment entered below, respondents contend that "the Constitutional language, 'penalties, forfeiture and fines collected for any breach of the penal laws of the State,' is broad enough to comprehend penalties, forfeitures and fines resulting from civil actions for breach of contractual duties to the State"; and that the "$2,090,000 constitutes a penalty, forfeiture and fine collected *for breach of the penal laws of the State.*" (Italics ours). Briefs on behalf of intervenors seek to support respondents' position. For the most part the cases cited involve statutory penalties under legislative enactments. The case of Barnett v. Atlantic & Pacific R. Co., 68 Mo. 56, is typical, where the court said: "The statute under consideration is unquestionably a penal statute. (1. c. 62) . . . The enactment of penal laws and the imposition of penalties for their violation, is a matter which the constitution has left to the legislature, and the constitution does not provide that all ▮▮▮ penalties imposed shall accrue to the State, nor that any shall so accrue; that matter has likewise been left to the Legislature. Such penalties only as the Legislature provides shall accrue to the State, are to go to the school fund under the Constitution of 1865. The language of the constitution of 1875 is slightly variant from that of 1865; but its purport, we think, is substantially the same." (1. c. 63-64). From these cases it appears that "penal laws" are considered to be statutory enactments providing a penalty for violation.

It is clear we think from the authorities we have cited, supra, that the right of this court to impose the penalties, forfeitures, or fines, which were imposed and collected in the case of State on inf. Taylor v. American Ins. Co., supra, for a breach of the implied contracts of the insurance companies with the state, were not based upon any statutory enactments authorizing the imposition and collection of such

fines and penalties. The proceeding was not a statutory action for the assessment and collection of fines and penalties prescribed by law, nor an action to recover a statutory fine or penalty. It was a common law action for the breach of implied contracts with the state. Penalties were assessed, but they were not the penalties provided by any penal laws.

In the case of State ex inf. Hadley v. Delmar Jockey Club, supra (200 Mo. 34, 71), this court said: "The violation of a corporation's contract with the State by misuser or usurpation may be evidenced by the fact of the violation of some statute, criminal in character, but in this kind of proceeding (in the nature of quo warranto) we try the right of the corporation to further hold its franchises, not the question of finding its guilt or innocence under the statute, and fixing punishment permitted by the statute."

Respondents, however, insist that, although the fines and penalties were collected in a civil action for a breach of contractual duties to the state, they were in fact collected for breaches of the penal laws of the state, towit, for bribery and conspiracy. Secs. 4323 and 4632 R. S. 1939 are cited. In support of their position, respondents cite State ex inf. Major v. Arkansas Lbr. Co., supra, which was an original proceeding by information in the nature of quo warranto, brought by the Attorney General, to oust certain respondents, all of which were corporations, from their franchises to do business in this State, or to oust and fine them, because of alleged violations of statutes leveled against pools, trusts and conspiracies. In ruling a defense based on the three year statute of limitations the court said (260 Mo. 212, 284): "This question does not seem ever to have arisen in this State in a case of this sort. There have been cases adjudged in which the rights of towns and villages to exercise their corporate franchises were brought in question by informations in the nature of quo warranto. It has been held upon the doctrine of laches, however, that the right to investigate such matters is sometimes barred without regard to the Statute of Limitations. . . . There is little, if any, similarity in fact between those proceedings and this at bar, et id genus omne. Scarcely a vestige remains but the name and we have uselessly and with violence retained this. We have reached out into common law without an excuse in the necessity of the case and appropriated merely a name for an action under penal statutes which themselves prescribed another and contemplated a different procedure. This action clearly involves the exaction of a penalty or forfeiture. [Northern Securities Co. v. United States, 193 U. S. 1. c. 358.] The statute quoted limits the right of action to the party aggrieved to the period of three years. The State is here the party aggrieved." The court then applied the Statute of Limitations applicable to civil actions. (260 Mo. 212, 293).

We agree that the action in which the $2,090,000.00 was collected involved a penalty, forfeiture, or fine, but it was not a direct proceed-

ing under penal statutes, nor one for the collection of any statutory fine, penalty or forfeiture.

Respondents further contend that "the phrase 'penal laws' as used in the 1875 Constitution and repeated in the 1945 Constitution has been held to comprehend the forfeiture of a bail bond"; and that "the substance of the action and the punitive or compensatory nature of the exaction, not the form of the proceeding, determines whether a penalty, forfeiture or fine is collected for breach of the penal laws." Gross v. Atchison & Gentry County, 320 Mo. 332, 8 S. W. (2d) 887 is cited. We think a careful reading of that case will show that that decision was in no sense based upon the words, "penal . . . laws," as used in Sec. 8, Art. XI, Constitution 1875. Those words do not appear in the opinion, the decision is not based upon them and, in addition, the wording of that section differs materially from Sec. 7, Art. IX of the present Constitution.

In the case of State ex rel. Rodes v. Warner, 197 Mo. 650, 659, 94 S. W. 962, the court referred to Huntington v. Attrill, 13 S. Ct. 224, 146 U. S. 657, 36 L. Ed. 1123, said "the necessities of that case required a consideration of penal laws in general, and a gloss of the words 'penal' and 'penalty'" and quoted as "in point" this definition: "'Penal laws, strictly and properly, are those imposing punishment for an offense committed against the State, and which, by the English and American constitutions, the executive of the State has the power to pardon'." Also see Coryell v. Atchison T. & S. F. R. Co., 273 Mo. 361, 201 S. W. 77, 78; The Common Council of Town of Indianapolis v. Fairchild, 1 Ind. (1 Cart) 315, 318; Village of Platteville v. Bell, 43 Wis. 488, 492; City & County of Denver v. School Dist. No. 1, 94 Colo. 406, 409, 30 Pac. (2d) 866; Drew v. Russel, 47 Vt. 250, 252; 36 C. J. 962, Law, Sec. 15; Barnett v. Atlantic & Pac. R. Co., supra; State ex rel. McKittrick v. Mo. P. S. Comm., 352 Mo. 29, 175 S. W. (2d) 857, 861; Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663, 665; 31 Words & Phrases, Perm. Ed. pp. 584-587.

There is no contention here that the Governor of the State, under his pardoning power, Sec. 7, Art. IV, of the Constitution, would have had power to release the respondent insurance companies from the payment of the penalties assessed against them.

In the case of State ex rel. Rodes v. Warner, supra, it was held that "where fines and penalties are *prescribed* as a punishment for a violation of public wrongs, i.e., crimes, and such penalties or fines are to be recovered by public authority, the disposition of such recovered fines or penalties come within the constitutional provision under consideration," which, in that case, was Sec. 8, Art. XI, Constitution of Missouri 1875. (Italics ours).

In State ex inf. McKittrick v. Koon, 356 Mo. 284, 201 S. W. 446, relied on by respondents, the penalty assessed had a statutory basis. Sec. 2029 R. S. 1939.

We hold that the words "penal laws of the state" as used in Sec. 7 Art. IX of the present Constitution refer to statutory enactments fixing or providing for penalties, forfeitures and fines and for their assessment and collection. The disposition of the fund in question was not controlled by Sec. 7, Art. IX, supra, if otherwise applicable, because it was not collected for a breach of the "penal laws" of the state, but was a penalty, forfeiture or fine imposed and collected for the breach of the implied contracts of the several corporations with the state, as ruled in the case of State on inf. Taylor v. American Ins. Co., supra.

█ Appellants next contend that "the court should have declared the law to be that the fund here involved was not 'state revenue' within the meaning of Sec. 3, Art. IX of the Constitution." The pertinent part of the section referred to reads as follows: "In event the public school fund provided and set apart by law for the support of free public schools, shall be insufficient to sustain free schools at least eight months in every year in each school district of the state, the general assembly may provide for such deficiency; but in no case shall there be set apart less than twenty-five per cent of the state revenue, exclusive of interest and sinking fund, to be applied annually to the support of the free public schools." A similar section in prior constitutions has been referred to as self-executing and a mandatory declaration as to the disposition to be made of the funds designated. Gross v. Atchison & Gentry Co., supra.

█ Appellants contend that in State ex rel. Gass v. Gordon, 266 Mo. 394, 181 S. W. 1016, this court construed Sec. 7, Art. XI of the Constitution of 1875, and held that "state revenue" meant "ordinary state revenue." Appellants insist that, a similar construction should be put on the words "state revenue" as used in the 1945 constitution; and that, since recent appropriation acts have used the language, "ordinary general revenue," such fact is entitled to great weight as a "legislative construction of the constitutional provision." We cannot agree to the conclusion reached as to the holding in the State ex rel. Gass v. Gordon case. In that case this court construed the Act of February 12, 1915 (Laws 1915, p. 89) which required the State Auditor to ascertain and set apart one-third ($\frac{1}{3}$) of the ordinary revenue for the support of the public schools. The conclusion reached in that case was, in part, based upon the use of the word "ordinary" in Sec. 6 of Art. XI of the Constitution of 1875 and the appropriation act then under consideration. It was held that the "fines" assessed against the Arkansas Lbr. Company and others in the suit of State ex inf. v. Arkansas Lbr. Company et al., supra, were not to be taken into account. "This, for the reason that, while it is undoubtedly revenue, it is not ordinary revenue, but wholly adventitious and in the nature of a 'windfall,' if we may use an horticultural expression." The word "revenue," when not modified by the word "ordinary," was

1214

said to mean: "The annual and current income of the state, however derived, which is subject to appropriation for general public uses." And see, State ex rel. Thompson v. Board of Regents for Northeast Mo. State Teachers' College, 305 Mo. 57, 264 S. W. 698, 700; State ex rel. McKinley Publishing Co. v. Hackmann, 314 Mo. 33, 47, 282 S. W. 1007.

Respondents have abandoned a position taken below that, if Sec. 7 of Art. IX, supra, did not apply to the entire fund, at least, one-third of the fund was set aside to the State Public School Moneys Fund by Sec. 2120, Laws, 1945, p. 417. This section uses the words "one-third (⅓) of the ordinary general revenue paid into the State Treasury." See, State ex rel. Gass v. Gordon, supra.

We hold that the fund in question was "state revenue," and that under Sec. 3, Art. IX, supra, 25% was required to be set aside and placed in the State Public School Moneys Fund. See, Sec. 15, Art. IV, Constitution 1945.

The judgment of the trial court is reversed and a declaratory judgment entered in conformity with this opinion. *Bradley, C.,* concurs; *Van Osdol, C.,* dissents.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.