MISSOURI GAMING COMMISSION,
Respondent,

v.

MISSOURI VETERANS' COMMISSION,
et al., Respondents,

Board of Education of the City
of St. Louis, Appellant.

No. 79564.

Supreme Court of Missouri,
En Banc.

Sept. 30, 1997.

Kenneth C. Brostron, Lisa O. Stump, Michael W. Roskiewicz, St. Louis, for Appellant.

Maribeth McMahon, St. Louis, for St. Louis City School Fund.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael W. Bradley, Asst. Atty. Gen., Jefferson City, for Missouri Gaming Commission and Missouri Veterans' Commission.

Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for Missouri Veterans' Commission.

ROBERTSON, Judge.

Are administrative penalties imposed by the Missouri Gaming Commission pursuant to section 313.805(6), RSMo 1994, "collected for a breach of the penal laws of the state" and, therefore, required to be distributed to schools pursuant to article IX, section 7 of the Missouri Constitution? The trial court held that the Missouri Gaming Commission penalties are not imposed by a penal law of the state and ordered the penalties distributed as directed in section 313.835, RSMo 1994. Because the constitutionality of section 313.835 is at issue, this Court has exclusive appellate jurisdiction. Mo. CONST. ART. V, SEC. 3. We reverse the judgment of the trial court and remand the cause with directions to enter an order transferring the disputed funds to the appropriate school district or districts.

**I.**

The facts are stipulated. The Missouri Gaming Commission ("Gaming Commission") assessed an administrative penalty of $225,000 against the President Riverboat and Casino–Missouri, Inc. ("President Casino") for employing unlicensed persons and for failing to report regulatory violations. President Casino operates in the City of St. Louis. Both offenses violated the Gaming Commission's rules and regulations.

President Casino paid the penalty. The Gaming Commission filed a petition in interpleader requesting the Circuit Court of Cole County to order the Veterans' Commission and the St. Louis City School Fund to interplead and state a claim to the $225,000. The circuit court granted leave for the Board of Education of the City of St. Louis ("the Board") to intervene, finding that the Board, as the ultimate beneficiary of any funds recovered, was the only party that could properly represent the Board's interests.

The trial court declared that not every penalty is collected under a penal law and found that the Gaming Commission imposed the administrative penalty for a violation of the Gaming Commission's regulations and not for a violation of a penal law of the state and held that the proceeds should be distributed according to section 313.835. The Board appealed.

## II.

Section 313.805(6), RSMo 1994, empowers the Gaming Commission "[t]o assess any appropriate administrative penalty against a licensee, including, but not limited to, suspension, revocation, and penalties of an amount as determined by the commission." Section 313.835.1, RSMo 1994, provides:

All revenue received by the [gaming] commission from license fees, penalties, administrative fees, reimbursement by any excursion gambling boat operators for services provided by the commission and admission fees authorized under the provisions of sections 313.800 to 313.850 shall be deposited in the state treasury to the credit of the "Gaming Commission Fund" which is hereby created for the sole purpose of funding the administrative costs of the commission relating to excursion gambling boat operations, subject to appropriation.... Beginning July 1, 1995, any excess moneys not already encumbered at the end of any fiscal year in the gaming

commission fund shall be distributed in the following manner:

(1) The first five hundred thousand dollars shall be appropriated on a per capita basis to cities and counties that match the state portion and have demonstrated a need for funding community neighborhood organization programs for the homeless and to deter gang-related violence and crimes;

(2) Until July 1, 2000, the remaining unencumbered funds shall be transferred to the "Veterans' Homes Capital Improvement Trust Fund", as hereby created in the state treasury.... Beginning July 1, 2000, the remaining unencumbered funds shall be transferred from the gaming commission fund to the state general revenue fund.

Article IX, section 7 of the state constitution dictates that "*all penalties,* forfeitures, and fines collected hereafter for any breach of the *penal laws* of the state, shall be distributed annually to the schools of the several counties according to the law." (Emphasis added.)

The parties agree that the casino paid the administrative penalty pursuant to section 313.805(6) for a violation of section 313.812.14(2),[1] RSMo 1994. The only issue in this case, therefore, is whether section 313.805(6) is a penal law of the state within the meaning of article IX, section 7.

"[W]e presume that [a] statute is valid unless it clearly contradicts a constitutional provision." *Asbury v. Lombardi,* 846 S.W.2d 196, 199 (Mo. banc 1993). We assign to words not otherwise defined in the constitution their plain, ordinary and natural meaning as found in the dictionary. *Buechner v. Bond,* 650 S.W.2d 611, 613 (Mo. banc 1983). "Penal" means "designed to impose punishment." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1668 (1976).

---

1. Section 313.812.14 provides that:
  [T]he following acts or omissions may be grounds for such discipline:
  \* \* \*
  (2) Failing to comply with any rule, order or ruling of the commission or its agents pertaining to gambling;

The Veteran's Commission relies on *New Franklin School Dist. No. 28 v. Bates*, 359 Mo. 1202, 225 S.W.2d 769 (1950), for the proposition that a penal law is a criminal law and does not include penalties imposed for civil violations. *New Franklin* notes that *State ex rel. Rodes v. Warner*, 197 Mo. 650, 94 S.W. 962, 964 (1906), cites *Huntington v. Attrill*, 146 U.S. 657, 667, 13 S.Ct. 224, 227, 36 L.Ed. 1123 (1892), which says that penal laws "strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon." 225 S.W.2d at 774, *quoting Huntington.* The Veteran's Commission thus argues that this Court has adopted a legal definition, not the plain, ordinary definition in determining the meaning of the phrase "penal laws" used in the constitution. We disagree.

In *New Franklin*, the attorney general had filed a quo warranto action against several insurance companies for an "abuse and misuse of their corporate franchises to do business in this State." 225 S.W.2d at 771. The trial court imposed substantial penalties against the insurance companies to which a school district laid claim under article IX, section 7, after the insurance companies paid the penalties. This Court's decision that the constitution did not require payment of the penalties to the school district turned on the fact that the trial court had imposed the penalties under quo warranto, a common law action, rather than pursuant to a statute that permitted penalties. The Court said:

> [T]he right of this court to impose the penalties ... which were imposed were [sic] not based upon any statutory enactments authorizing the imposition and collection of such fines and penalties. The proceeding was not a statutory action for the assessment and collection of fines and penalties prescribed by law, nor an action to recover a statutory fine or penalty. It was a common law action for the breach of implied contracts with the state. Penalties were assessed, but they were not the penalties provided by any penal laws.

*New Franklin*, 225 S.W.2d at 773. The Court said, "We hold that the words 'penal laws of the state' as used in Sec. 7, art. IX of the Constitution refer to statutory enactments fixing or providing for penalties, forfeitures and fines and for their assessment and collection." 225 S.W.2d at 774.

The *New Franklin* holding is broad and consistent with the ordinary meaning of the words used in article IX, section 7. It is also consistent with *Rodes*. *Rodes* divided penal laws into three categories: First, "[w]here penal statutes are merely leveled at a violation of private rights, the penalties provided in such laws are not devoted by the Constitution itself to the public school fund." 94 S.W. at 965. Second, "where penalties may be recovered by a civil action part may go to the informer and the other part may be devoted to the purposes prescribed by statute law." 94 S.W. at 965. Third,

> [W]here fines and penalties are prescribed as a punishment for a violation of public rights, i.e., crimes, and such penalties or fines are to be recovered by public authority, the disposition of such recovered fines or penalties comes within the constitutional provision [article IX, section 7] ... and they may not be turned awry from the prescribed constitutional course.

94 S.W. at 966.

Applying *New Franklin* it is apparent that section 313.805(6) is a statutory enactment, that the Gaming Commission penalized President Casino under the authority of section 313.805(6), which provides for penalties, and for their assessment and collection. And under *Rodes*, the penalty is for violation of a public right, as opposed to a private one, and it is recoverable by public authority.

On the strength of this precedent, we conclude that section 313.805(6) is a penal law of the state within the plain meaning of article IX, section 7. *Accord Reorganized School District No. 7 v. Douthit*, 799 S.W.2d 591 (Mo. banc 1990) (civil forfeitures under the criminal forfeiture act, section 513.607, RSMo 1986, are payable to school districts pursuant to article IX, section 7).

To the extent that section 313.835 provides for the disbursement of moneys collected from penalties, forfeitures and fines to entities other than the public schools of the

several counties, it violates article IX, section 7 of the constitution. Accordingly, we hold that any penalties, forfeitures or fines collected pursuant to section 313.805(6), must be distributed as required by article IX, section 7 of the Missouri Constitution.

### III.

The judgment of the trial court is reversed and the cause is remanded with directions to enter an order transferring the disputed funds to the appropriate school district or districts.

BENTON, C.J., and PRICE, LIMBAUGH, COVINGTON and WHITE, JJ., concur.

HOLSTEIN, J., concurs in result in separate opinion filed.

HOLSTEIN, Judge, concurring.

I agree with the principal opinion to the extent that it concludes that a penal law is one that seeks to impose a punishment for an offense against the state. However, I disagree with the majority's analysis because it implies that the statute in question is a penal law simply because it allows a public authority to collect a penalty for its violation. This analysis reads the words "penal laws" out of the constitution.

Article IX, sec. 7, of the constitution requires "all penalties, forfeitures and fines collected ... for any breach of the penal laws of the state" be distributed to the schools. Reliance on precedent[1] or dictionary definitions[2] of "penal" or "penal laws" is inconclusive. Unlike any previous case, here both the prohibited conduct and penalty are determined by administrative rule, not by statute.

Determining what the constitution means requires some additional analysis of the intent and purpose of the provision.

The apparent purpose of article IX, sec. 7, is twofold. First, and most obvious, it creates a ready non-tax source of local funds that must be used to educate children. Second, by limiting the use of the funds, the provision discourages a governmental body having discretion regarding the amount of penalty imposed for violation of a state law from levying excessive or oppressive penalties.

In concluding that sec. 313.805 is a penal law, the majority relies solely on the fact that the statute authorizes the gaming commission to assess a civil penalty for its violation. In my view, determination of whether a statute is a "penal law" within the meaning of article IX, sec. 7, requires a careful analysis of several factors. The first factor to be considered is whether the agency has significant discretion in whether to assess the penalty. The greater the discretion accorded the agency, the more likely the statute is a "penal law." The second factor is whether the penalty authorized by the law might reasonably be intended to compensate the public for administrative inefficiency occasioned by noncompliance with the law. A law authorizing a nominal penalty for violating a rule designed to promote the efficiency of the agency would not be a penal law. However, where a statute permits a substantial penalty that is clearly not designed to compensate for any agency cost, delay or inconvenience but is imposed to punish the person involved and discourage others from doing some wrong to the public at large, the statute is penal in nature. The third factor is whether

---

**1.** *New Franklin School District No. 28 v. Bates,* 359 Mo. 1202, 225 S.W.2d 769, 773 (1950), held that penalties under the common law are not assessed for breach of penal laws. However, it is also true that a common law penalty, like an administrative penalty in this case, is rooted in statute. *See sec. 1.010.*

**2.** To be sure, the dictionary definition of "penal" is "designed to impose punishment." But reading on in the same dictionary cited by the majority, one finds the term "penal law" defined as "a law imposing a penalty (as of fine, imprisonment, loss of civil rights) ... [synonymous to] criminal law." *Webster's Third New International Dictio-*

nary 1668 (1981). Again, *Black's Law Dictionary* uses two sentences to define "penal laws." The first reads, "Term, in general, refers to state and federal statutes that define criminal offenses and specify corresponding fines and punishment." The second sentence is broader, defining "penal laws" as "Statutes imposing a penalty, fine, or punishment for certain offenses of a public nature or wrongs committed against the state." *Black's Law Dictionary* 1133 (6th ed.1990). Depending on which definition one chooses, one may reach a different result under the facts of this case.

the statute itself refers to the charge as a "penalty." Just as there may be non-penal laws imposing nondiscretionary, compensatory administrative fees that are characterized as "penalties," there may also be charges characterized as "late fees," "costs" or "special assessments" that are, in fact, "penalties" for the breach of "penal laws" under this or any reasoned analysis. Nevertheless, where the legislature uses the word "penalty" in the text of a statute, that is an indicator that the law in question is a "penal law." Inasmuch as statutes are presumed to be constitutional, the burden should be on the party attacking its constitutionality to show that a violation has occurred.

Through application of these factors, I conclude that sec. 313.805 and the regulations thereunder are a penal law of this state within the meaning of article IX, sec. 7. Though the language of the statute and regulation are silent as to the purpose of the penalty, the amount of the penalty bespeaks a punitive purpose, and the regulation violated was intended to protect the public at large rather than compensate the Commission for any administrative inefficiency caused by the violation. Second, the amount of the penalty and whether to seek it in the first place is left entirely to the discretion of the Gaming Commission. Finally, the statute uses the word "penalty" to describe the assessment.

Implicit in the majority opinion is a much more sweeping holding, which should not be lost on the General Assembly or the people of Missouri. Henceforth, a statute or regulation assessing a nominal "penalty" by a water district for late payment of a bill, a library for late return of a book, or a university for filing a late admission application will be considered a penal law. I do not believe that statutes authorizing such regulations were ever intended to fall within the ambit of "penal laws" under article IX, sec. 7.

As I read the majority opinion, any penalty rooted in statute, even though no agency has discretion regarding the amount of the assessment, and even though it is solely compensatory in nature, is considered a penal law. As previously noted, article IX, sec. 7, requires "all penalties ... for any breach of the penal laws" to be distributed to the schools. The majority opinion reads the word "penal" out of the constitution by its implicit mandate that any penalty under law of the state must be distributed to the school districts. Every word of the constitution should be given effect. I believe the principal opinion goes further than is intended by the language of the constitution. For this reason, I concur in result only.