E. W. SKINNER v. ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

**Division One, January 3, 1914.**

1. **CONSTITUTIONAL QUESTION: Appeal: Penalties.** Whether or not the penalty prescribed by Sec. 1110, R. S. 1899, for the failure of a railroad company to clear its right of way twice a year, is recoverable by a person whose property has been damaged by fire as a result of such failure, or must be recovered by the State for the use of the county school fund (Constitution, sec. 8, art. 11) involves a constitutional question such as, properly raised and preserved, will vest in the Supreme Court jurisdiction of an appeal from a judgment awarding the penalty to the person damaged.

2. **CLEARING RAILROAD RIGHT OF WAY: Sec. 1110, R. S. 1899: Penalty: Collectible by State Only.** The penalty prescribed by Sec. 1110, R. S. 1899, for the failure of a railroad company to clear its right of way twice a year, is not recoverable at the suit of one whose property has been damaged by fire as a result of such failure, but can only be recovered by the State for the use of the county school fund. [Overruling Scott v. Railroad, 38 Mo. App. 523, and McFarland v. Railroad, 175 Mo. 422.]

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED (*with directions*).

Skinner v. Railroad.

*R. T. Railey, J. F. Green* and *N. A. Mozley* for appellant.

*Abington & Phillips* for respondent.

BROWN, C.—The plaintiff was the owner of a rail fence upon a tract of land belonging to another which adjoined the right of way upon

R. S. 1899, sec. 1110: Clearing Railroad Right of Way: Penalty.

which the defendant's railroad was constructed and operated. On November 9, 1908, a fire, which had found lodgment in the dead and dry vegetation on the right of way, spread through this material to the land on which the fence stood and destroyed it. The defendant had not caused this kind of material to be cleaned off and removed from the right of way during that year up to the time of the fire, and this suit was instituted under the provisions of section 1110, Revised Statutes 1899, requiring such work to be done between the first and fifteenth days of August, and between the fifth and twenty-fifth days of October of each year. The petition contained a count for damages for the burning of the fence and a count for the penalty of five hundred dollars imposed by the section referred to. There was a verdict and judgment for plaintiff on each count—twenty-eight dollars for damages on the first count, and eighty-five dollars for penalty on the second count.

The appellant assigns specially as error that there is no substantial proof that the fire was

Constitutional Question: Appeal.

started by a passing engine; and also that the court erred in holding that the provisions of section 8 of article 11 of the State Constitution, and of section 1144, Revised Statutes 1899, do not require that the penalty sued for shall go to the school fund of the county. It also generally assigned that the court erred in refusing, at its request, to instruct peremptorily for the defendant.

In its brief the appellant waives the assignment relating to the absence of evidence that the fire was set by one of defendant's engines, as follows: *"We predicate this appeal squarely on the proposition that respondent has absolutely nothing to do with the penalty provided in said section 1110, but that the recovery of such penalty and its ultimate disposition are controlled expressly and entirely by said constitutional and statutory provisions above cited."*

Our jurisdiction is founded upon the constitutional question so stated. It has been insisted upon as a defense at every opportunity during the progress of the case. It is evidently presented in good faith, and even should its decision be unnecessary to the final disposition of this appeal the jurisdiction will not be defeated. [Dorrance v. Dorrance, 242 Mo. 625; Holder v. Aultman, 169 U. S. 81.]

The provision of the statute upon which both counts of this petition are framed was enacted March 21, 1883, as an amendment to section 810 of the Revised Statutes of 1879 and was in force as a part of section 1110 of the revision of 1899 at the time of the fire complained of.

It is as follows: "It shall be the duty of every corporation, company or person owning

Penalty Recoverable Only by State.

or operating any railroad or branch thereof in this State, to cause all dead or dry vegetation and undergrowth upon the right of way occupied by such railroad company to be cleared off and burned up or removed twice in each year, for the purpose of preventing the spread of fire, and the destruction of property, to-wit: Between the 1st and 15th day of August, and between the 5th and 25th day of October, in each year, and any corporation, company or person failing to comply with the provisions of this section, shall incur a penalty not to exceed five hundred dollars, and be liable for all damages done by said neglect of duty." [Laws

1883, p. 51.] Its object is plainly stated to be the *preventing* of the spread of fire and the destruction of property. Its benefits are not limited to the owners of adjoining lands or of any lands. Its protection is admitted to extend to the plaintiff, whose fence was severed from the ownership of the real estate upon which it was situated and was therefore his personal property. Its purpose was not primarily to give redress to the person injured but to *prevent* the spread of fire that might cause injury. The penalty imposed by its terms is not for any injury it may do, but to punish the owner of the railroad for failing to comply with the act by causing dead or dry vegetation and undergrowth upon its right of way to be cleared off or burned or removed twice each year at the particular times it requires it to be done. It contains no hint of a purpose on the part of the Legislature to impair its preventive character by permitting it to be disobeyed with impunity until such disobedience should actually result in the destruction it was designed to prevent, but words could not have been more fitly chosen to express the idea that the moment the railroad company fails to comply with its provisions by making its semiannual cleanings it incurs the penalty. We cannot avoid this conclusion without disregarding the common and obvious meaning of the simple words employed, and substituting an object of our own for the one so unequivocally expressed. Nor do the concluding words of this amendment—"and be liable for all damages done by said neglect of duty" —change or tend in the remotest degree to change the plain meaning of the words already used. They express the meaning which the law would imply without them—no more, no less. They only serve to emphasize the intention of the Legislature to impose a penalty distinct from any liability for private injury, for which the recovery is liquidated as compensation for "damages done." In considering the question our

first thought is to ask: Does this statute impose the penalty for the failure of the owner of the railroad to clear its right of way? If the answer is in the affirmative, and we cannot see how it could be otherwise, then it is impossible that it should have been its intention to vest the action to recover it in the injured party, because at the time the offense is completed and the penalty accrues there is no injured party.

We would experience no hesitation in deciding as we have indicated without any discussion other than to call attention to the terms of the statute, were it not that the Kansas City Court of Appeals in Scott v. Railroad, 38 Mo. App. 523, and this court in McFarland v. Railroad, 175 Mo. 422, have each arrived at a different conclusion. In the Scott case the court argued as follows: ''The damages indisputably are recoverable by the aggrieved, and why not the penalty as well? There is nothing in the language we have just quoted, that justifies the conclusion that the damages are to be recovered by the aggrieved party and the penalty by the State or county for the use of the county school fund. If the Legislature had so intended, it would have been so expressed in the statute itself.'' In that case there had been a general demurrer to the petition counting on the penalty, which was overruled. The defendant declined to plead further and the court, without inquiry of damages, and acting upon the situation as if there had been a plea of guilty in a criminal case, assessed one-half the maximum penalty ($250) for which it entered judgment. In the McFarland case we cited and followed the reasoning of the Kansas City Court of Appeals in the Scott case. The learned judge who wrote our opinion in that case, to whose work upon this bench our State is indebted for much of the best in its jurisprudence, naturally realized that many persons and much property might be involved in the destruction wrought by a single fire. Valuable forests that had

escaped the dangers of centuries of contact with the methods of primitive men, had been dissipated in smoke in the breath of the modern locomotive. Civilization produced nothing too good to feed the insatiable flames. Even a paltry penalty of five hundred dollars hanging over the careless or shiftless might induce them to take care to prevent the conflagration, but when it had occurred and passed beyond control it might not amount to a drop in the bucket of destruction. Under the stress of these difficulties and dangers this simple but plastic statute was molded into an elaborate scheme, so that when one should suffer loss by a fire communicated through a disregard of its provisions, he should not only have the right to recover from the wrongdoer the amount of his damages, but should become entitled to the penalty, or so much of it as the court should see fit to give him. If he did not get it all then the next comer might repeat the process, and so on in the order of their coming until the penalty should be exhausted, when the proverbial fate of the hindmost would befall the remaining sufferers, should any be left.

Another reason why it was assumed that this penalty was given to the person injured in addition to his damages was because the law gives it to no one else. It is true that the Constitution (section 8, article 11) provides that the clear proceeds of all penalties and forfeitures collected in the several counties for any breach of the penal or military laws of the State, shall belong to and be securely invested and sacredly preserved in the several counties as a county public school fund. Thus, we see the sovereign people of the State have in the most solemn and conclusive form in which they can speak, set aside *all* penalties and forfeitures collected in the several counties as a fund sacred to and to be faithfully appropriated for establishing and maintaining free public schools. The *title* is expressly vested in the county,

and it is expressly made the duty of the prosecuting attorneys to prosecute actions for the recovery of debts, fines, penalties and forfeitures accruing to the State or county. [R. S. 1899, sec. 4950.] In addition to this it is provided that "whenever a fine, penalty or forfeiture is or may be inflicted by any statute of this State for any offense the same may be recovered by indictment or information, notwithstanding another or different remedy for the recovery of the same may be specified in the law imposing the fine, penalty or forfeiture." [ R. S. 1899, sec. 2391.] The remedy is ample to cover every kind of fine, penalty or forfeiture accruing to the county under this provision of the Constitution for the benefit of the school fund.

It was argued by the court in the McFarland case that the clause of the Constitution we have quoted only applies to the *clear proceeds* of the penalties and forfeitures to which it refers, meaning only such money as, by the law imposing them, accrues to the public, and that notwithstanding that provision, the Legislature may give a part of it to the informer, or to the party injured; and in such case the clear proceeds will only represent the amount not so disposed of. This is probably correct, within the limits of the legislative power, which, however, does not extend to the arbitrary redistribution of the property of individuals. We assume in this case that had the act provided that the entire penalty go to some person or persons damaged by a fire communicated to his property in violation of its terms there would have been nothing to which the constitutional appropriation could apply; but this does not affect the rule that springs from the very nature of our constitutional government, that when the legislature, in the exercise of the police powers by virtue of which it protects the persons and property of those within its jurisdiction, imposes a penalty for violation of the rule it prescribes, that penalty inures to the State unless either directly or by

necessary implication a different disposition is directed. The appropriation to the purposes of the State is made by its laws—in this case by the fundamental law to which the State government owes its existence. The unique argument that it belongs to the plaintiff because it is not, by the terms of the act, given to the State, and that it does not inure to the State because it belongs to the plaintiff finds no place for its operation.

In the McFarland case the court, overlooking the fact that any other way existed by which penalties and forfeitures accruing under this act could be recovered than by indictment or information under the provisions of section 2391, called attention to the fact that the word "offense" used in that section applied only to the "breach of laws established for the protection of the public, as distinguished from an infringement of mere private rights; a public violation of law; a crime; also, sometimes, a crime of the lesser grade; a misdemeanor." The distinction is a shadowy one, for the reason that the criminal laws are largely devoted to the protection of the persons and property— the "private rights"—of individuals, and that to prevent the starting and spread of fires in our fields, prairies and forests is a matter of great public concern, and when the Legislature has acted through penal laws for that purpose it is not for the courts to stand in the way of their enforcement. The legislative idea of the effect of such preventive laws is instructive as well as interesting, and is illustrated in sections 1123, 1124 and 1125, Revised Statutes 1899. Section 1123 is as follows: "All companies or corporations, lessees or other persons, owning or operating any railroad or part of railroad in this State, are hereby required on or before the first day of November, eighteen hundred and ninety-one (1891), to adopt, put in use and maintain the best known appliances or inventions to fill or block all switches, frogs and guardrails on

their roads, in all yards, divisional and terminal sta-
tions, and where trains are made up, to prevent as
far as possible the feet of employees or other persons
from being caught therein.  Any company or corpora-
tion, lessees or other person, owning or operating any
railroad or part of railroad in this State, who shall
fail to do any act or thing in this section required to
be done, or shall cause any act or thing not to be done,
or shall aid or abet any such omission, shall be deemed
guilty of a violation of this law, and shall forfeit and
pay the sum of ten dollars for every such offense, and
each day shall constitute a separate and distinct of-
fense.''  In section 1124 no remedy is created for the
recovery of the penalty, but it is taken for granted
that it is collectible by indictment under section 2391,
and provides that the law imposing it be given in
charge to the grand juries.  Section 1125 gives no
remedy by suit on account of the maiming or killing of
any person by reason of noncompliance with the law,
but assumes that such an action lies, and provides that
contributory negligence or carelessness shall not be a
defense.

It is with great reluctance that we disregard the
doctrine of the Scott and McFarland cases, but the
Legislature has expressed itself so plainly and unmis-
takably in the law under consideration that we are
constrained to agree with the learned editors of The
Lawyers' Reports Annotated (New Series, book 9, page
374, note) where, in referring to the two cases men-
tioned, they say:  ''The superiority of the claim of
this individual (the injured owner) over that of the
state is not convincingly demonstrated by the reason-
ing of the court.''  There is, therefore, no other course
open to us than to hold that the statute in question
was not intended to and did not give to the plaintiff
any interest in, nor right of action for the penalty sued
for in the second count of the petition.  The judgment
of the circuit court is therefore reversed, and the cause

remanded with directions to enter judgment upon the verdict rendered upon the first count of the petition as of the date of the judgment appealed from. *Blair, C.* concurs.

PER CURIAM.—The foregoing opinion by BROWN, C., is adopted as the opinion of the court. All concur—*Bond, J.*, in result.