R. L. GROSS v. ATCHISON and GENTRY COUNTIES ET AL.; GENTRY COUNTY and PAUL BROWN, Sheriff, Appellants.—8 S. W. (2d) 887.

Court en Banc, June 21, 1928.

*J. W. McKnight* and *George P. Adams* for appellants.

*W. R. Littell* for respondents.

WALKER, C. J.—This is a suit brought by a surety on a judgment rendered on a forfeited recognizance. Its purpose is to determine ownership between two counties of a sum of money paid by the surety into court in satisfaction of the judgment, upon the condition that the counties be required to interplead to determine the ownership of the forfeited fund. This was done. The claims of the respective counties were heard and considered and a finding in favor of one of them was made and the other perfected an appeal to this court.

One Charles Gross was charged by indictment in the Circuit Court of Atchison County with a felony. He applied for a change of venue and the same was granted and the case was ordered sent for trial to Gentry County. Following the granting of the change of venue he entered into a recognizance in the Circuit Court of Atchison County, with the plaintiff as surety, for his appearance in answer to said charge before the Circuit Court of Gentry County. He failed to appear before the latter court and a forfeiture was entered and a judgment rendered thereon against him and his surety. The latter paid into court the amount of the judgment rendered, with the result stated. The question at issue, is, does the forfeited fund belong to Atchison County where the criminal action originated and the recognizance was entered into, or to Gentry County, where the case was taken by change of venue and the judgment on the forfeiture was rendered?

I. There is no dearth of authority, constitutional or statutory, as to the manner in which the funds, derived from judgments rendered on forfeited bonds or recognizances, are to be disposed of when collected or paid into court, in the county where the criminal action was commenced. There is, however, no express statute directing such disposition where a forfeiture is taken in the circuit court of a county to which the criminal action has been transferred by change of venue, as in the instant case. Despite the general terms of the Constitution and the statute it cannot be said, under a liberal interpretation of the same, with a view to a necessary and reasonable disposition of the matter at issue, that we are confronted with a *casus omissus*. The words employed in the authority granted in the organic and statutory law may, without straining their meaning, be so construed as to provide a means for the determination of this case with a proper regard for the rights of the respective counties. In the disposition of this case, therefore, we are not attempting to supply what the framers of the Constitution or the Legislature omitted in enacting the law, the result of which would be to usurp the law-making power; but we are construing the meaning of general words, which cursorily considered only apply to cases in the county where the criminal action was commenced and not to those in which

a change of venue has been granted. This, under the rules of interpretation, we regard as permissible where, as at bar, the importance of the subject and the necessities of the case demand judicial action.

II. The contention is made by Gentry County in its intervening petition, but is abandoned in its brief and argument, that the entire Article XV (Chap. 16, R. S. 1899), is invalid in that it contains more than one subject and that the matter contained therein is not clearly expressed in its title, as required by Section 28 of Article IV of the State Constitution. The title to the revised bill embodying this article, as shown by the original rolls, is as follows:

''An act to revise and amend Article 14, relating to 'costs in criminal cases,' of Chapter 48, entitled 'Criminal cases, practice and proceedings' of the Revised Statutes of Missouri, 1889, and the acts amendatory thereto.''

This title discloses that the provision of the Constitution that a bill shall consist of one subject, which shall be clearly expressed in its title, is in general terms sufficiently complied with. It not only defines the chapter of which the article is a part but designates it in the exact words employed in the title to this article in former revisions of the statute. It does not, therefore, mislead but serves as a guideboard to indicate not only the subject-matter but the purpose of the article. Being sufficiently comprehensive in its terms and enacted as a revised bill with all of the formality required for the adoption of any other law, in that it was required to be read and authenticated by the Legislature and signed by the Governor in the same manner as any other bill, we are not impressed with the objections made to its validity and we regard them without force. [State ex inf. Hadley v. Herring, 208 Mo. 708, 723, 106 S. W. 984.]

It is insisted, however, that although the revision of Article XIV, Chapter 48 of the Revised Statutes 1889, by the enactment in lieu thereof of Article XV, Chapter 16, Revised Statutes 1899, Section 2862, of the latter article, did not repeal Section 4423 of the former. These sections are as follows:

''Sec. 4423. All fines and penalties imposed, and all forfeitures incurred, in any county, unless otherwise directed by law, shall be paid into the county treasury thereof, for the benefit of the school fund of the county.

''Sec. 2862. All fines and penalties imposed, and all forfeitures incurred, in any county, unless otherwise directed by law, shall be paid into the county treasury thereof, for the benefit of the criminal cost fund of said county to be used for the payment of criminal costs taxed against said county.''

The invalidity of Section 2862, so far as relates to the disposition of funds arising from fines, penalties and forfeitures incurred in a county, is the basis of this contention. It is not necessary to discuss the many collateral questions submitted in support of this contention, for the reason that the facts as disclosed by these sections do not sustain the reasoning or the conclusion sought to be made therefrom. The contention is that Section 2862 is void as in violation of the Constitution (Sec. 8, Art. XI, Const. Mo.), in directing the disposition of the funds designated therein.

An analysis of this section will not, under the rules of interpretation and in view of its purpose and the limitations of the Constitution, sustain the unqualified assumption made as to its invalidity. Its purpose was to give legislative recognition to the mandatory requirements of the Constitution concerning the disposition, when collected, of the funds designated therein. This having been done it was further attempted to designate the manner in which, or more definitely, the purpose for which, such funds should be appropriated or expended. The parts of the section are severable; and the invalid or second part having reference to the use to be made of the funds may, without destroying the context or limiting the purpose of the first part, be severed from the latter, which is clearly valid.

It is beyond controversy that a part of a statute may be constitutional and valid and the remainder unconstitutional. The test, as was tersely said in effect by BRACE, P. J., in speaking for the court in Birch v. Plattsburg, 180 Mo. 413, 418, is not whether the void and the valid parts are contained in the same section . . . ; but rather whether they are essentially and inseparably connected; as it would be inconsistent with all just principles of constitutional law to adjudge enactments, not obnoxious to any constitutional exceptions, void, because they are associated in the same act but not connected with or dependent on others which are unconstitutional. Where the provisions are so interdependent that one may not operate without the other or so related in subject and object that it is impossible to suppose that the Legislature would have passed one without the other, the whole must fall; but if when the invalid portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent it must be sustained. The uniform application of this rule is attested by the authorities cited (p. 419) in the Birch case, and in State ex rel. Musser v. Birch, 186 Mo. l. c. 215.

A concrete application of the rule in the instant case will demonstrate that the elision of the invalid portion of Section 2862, beginning with the words "for the benefit, etc." will in nowise render imperfect or destroy the purpose intended to be effected by the first or valid part of the section, ending with the word "thereof." A com-

parison of the valid portion of Section 2862 with Section 4423 will disclose, despite the revision of the entire article in which Section 4423 appears and the enactment of Section 2862 in the article as revised in 1899, that the revision, so far as these sections are concerned, simply resulted in a continuation of the law as it has appeared in the statutes since its original enactment (Laws 1842-3, sec. 5, p. 29). The valid portion of Section 2862 continued in force until its repeal in 1901 (Laws 1901, p. 141). It is, therefore, eliminated from consideration, so far as it may be sought to be invoked as determinative of the issue in this case.

Incidentally, it may be said that since the adoption of Section 5 of Article IX of the Constitution of 1865, which was continued in force in Section 8 of Article XI of the Constitution of 1875, the legal necessity of the enactment of statutes directing the disposition of funds arising from fines, penalties and forfeitures has not existed, except to give formal legislative recognition to the constitutional provision in regard thereto. This provision is affirmative in its nature and direct in its terms; it consists simply in a mandatory declaration as to the disposition that is to be made of the public funds designated and is self-executing. [State ex inf. Barker v. Duncan, 265 Mo. 26, 42, and cases, 175 S. W. 940; McGrew v. Railroad, 230 Mo. 496, 546, 132 S. W. 1076.]

The exhaustive research and painstaking care employed by counsel to sustain the contention that by the terms of Section 4423, supra, the ownership of the forfeited fund should be held to be in Gentry County is a sufficient excuse for the extended review that has been given to this phase of the case. That matter having been disposed of, we are left to a consideration of the applicable provisions of the Constitution and the statute in determining the ownership of the forfeited fund.

III. If an action had been rendered necessary to enforce the payment of the surety's liability it would not have partaken of the nature of a criminal proceeding, although having its origin in a prosecution for a crime. It would simply have been an action by the State on a forfeited recognizance which did not involve the guilt, innocence, conviction or acquittal of any person. It would, in short, have been a suit to enforce the surety's contract with the State, executed by the former when the recognizance was entered into. Possessing this characteristic its determination must rest largely upon the principles of the law applicable to suits on contracts, rather than the laws in regard to criminal prosecutions. The invoking of the latter may be authorized so far as they may throw light on the ownership of the fund, but not as finally determinative of that matter. The fact that the surety admitted his liability and paid the money into court, thus obviating the necessity of an action, does not affect the nature

of the proceeding nor clarify the situation in determining the ownership of the forfeited fund. [State v. Gross, 275 S. W. (Mo.) 769; State v. Wilson, 265 Mo. l. c. 9; State v. Streutker, 288 Mo. 156, 231 S. W. 565; State v. Hoeffner, 124 Mo. 488; State v. Heed, 62 Mo. 559.]

If it were permissible to reason by analogy from the Constitution and statutes prescribing the manner of the disposition of such a fund in a county in which no change of venue has been taken, little difficulty would be encountered in determining that its ownership is in Atchison County. The Constitution (Sec. 8, Art. XI) prescribes that the "clear proceeds of all penalties and forfeitures . . . shall belong to and be securely invested and sacredly preserved in the several counties as a public school fund." The "several counties" referred to must, in reason, mean the counties in which the proceedings were had out of which the funds originated. While suits for the recovery of penalties and forfeitures are required to be brought by the State because the obligation is made to the State, the amounts recovered belong to the counties, and it would involve an unnecessary formality upon their recovery to require them to be paid into the State Treasury and subsequently apportioned to the counties.

IV. As further persuasively indicative of the disposition of this fund it is provided in Section 4189, Revised Statutes 1919: "In any criminal cause in which a change is taken from one county to any other county for any of the causes mentioned in existing laws, . . . and in which" (causes) "costs are liable to be paid out of a county treasury, such costs shall be paid by the county in which the indictment was originally found or proceedings were originally instituted; and, in all cases where fines are imposed upon conviction under such indictment or prosecutions, payable to the county, such fines shall go to the county where such indictment was found or prosecution instituted."

Section 3988, Revised Statutes 1919, provides that costs necessarily incurred in the removal of any cause shall be adjusted and allowed in the court wherein the cause was tried and shall be taxed as other costs. Section 4189 may be said to be supplemental to Section 3988 in that the latter prescribes the court wherein costs in change of venue cases are to be taxed or adjusted and allowed while the former designates the county which shall be liable for their payment. These statutes, as their terms clearly indicate, have reference only to proceedings which are a necessary part of the criminal action. Being singularly silent as to the manner in which the fund in controversy is to be disposed of they lend no aid to the satisfactory determination of that issue. Especially is this true where, as we have

shown, whatever proceeding is had or action taken in the forfeiture of the recognizance at bar, is purely civil in its nature. Such being its character it would seem as a matter of right' that the county where the criminal action originated and which, under the statute (Sec. 4189), is charged with the expenses of the prosecution and entitled to fines imposed in counties to which a change of venue is taken, should be entitled to the fund arising from the forfeiture of a recognizance arising out of a criminal prosecution originating in such county. We would be inclined to so hold if any authority existed therefor. However, there is nothing in these sections which, under a liberal construction of the Constitution and statutes, will authorize such a holding. This condition of the law may work an injustice, but the remedy lies in a resort to legislative and not judicial action.

Upon the taking of the change of venue and the transmittal of the recognizance from Atchison to Gentry County, the latter became possessed of the case for all purposes necessary to its final determination. Incidental to this jurisdiction, but not dependent upon it in its legal phases, was the forfeiture of the recognizance upon the failure of the defendant, Gross, to appear in answer to the charge preferred against him. Upon the payment of the money into court by the surety of Gross upon the debt confessed by the former as such surety (State v. Hoeffner, 124 Mo. 488), the amount paid by him under the Constitution became a part of the county public school fund. There being no statute authorizing its transfer to Atchison County we find no other alternative than to hold that it should be paid into the treasury of Gentry County as a part of its school fund. This conclusion necessitates the reversal and remanding of this case that judgment may be rendered by the circuit court herein as indicated in this opinion. *White, Blair* and *Atwood, JJ.*, concur; *Ragland* and *Gantt, JJ.*, dissent.