REORGANIZED SCHOOL DISTRICT NO. 7 LAFAYETTE COUNTY, State of Missouri, a/k/a Odessa R–VII School District, Appellant,

v.

Merle DOUTHIT, et al., Respondents.

No. 72586.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1990.

Rehearing Denied Dec. 18, 1990.

James D. Worthington, Lexington, for appellant.

Weldon W. Perry, Jr., Lexington, for appellees.

Steven L. Wright, General Counsel, Missouri School Boards Assn., Columbia, amicus curiae (Missouri School Boards Assn.).

BLACKMAR, Chief Justice.

This case treats of the distribution of the proceeds of money and property seized under the "Criminal Forfeiture Act."

During the years 1987 and 1988 three persons were arrested on drug charges in Lafayette County, Missouri. The vehicles transporting the drugs were found to contain cash aggregating more than one million dollars. All of the arrested persons were charged with violation of state laws relating to controlled substances. Two were convicted but one apparently has not been tried. Civil proceedings were instituted to forfeit the cash and the proceeds of the sale of the automobiles, and final judgments of forfeiture were entered. The circuit court ordered, *ex parte*, distribution of the proceeds to various law enforcement agencies pursuant to § 513.607.1 and .2, § 513.620, and § 195.145.4, RSMo 1986, reading as follows:

§ *513.607.1 and .2.* Property subject to forfeiture—procedure.

1. All property of every kind used or intended for use in the course of, derived from, or realized through criminal activity is subject to civil forfeiture. Civil forfeiture shall be had by a civil procedure known as a CAFA forfeiture proceeding.

2. A CAFA forfeiture proceeding shall be governed by the Missouri rules of court, rules of civil procedure, except to the extent that special rules of procedure are stated herein.

\*      \*      \*      \*      \*      \*

§ *513.620.* Disposition of property after judgment.

Subject to the requirement of protecting the interest of all innocent parties, the court may after judgment of forfeiture make any of the following orders for disposition of the property:

(1) Destruction of contraband, the possession of which is illegal;

(2) Retention for official use by any agency of this state or any political subdivision thereof;

\* \* \* \* \* \*

(4) Judicial sale of the property;

\* \* \* \* \* \*

(6) Any other disposition of the property as may be provided by the laws of this state which is in the interest of justice and adequately protects innocent parties.

\* \* \* \* \* \*

§ *513.623.* Disposition of proceeds after sale.

The net proceeds of any sale or disposition after satisfaction of the interest of any innocent party shall be paid into the Missouri state general revenue; provided however that, the net proceeds of any sale or disposition of property forfeited as a result of criminal activity in violation of section 568.060, RSMo, shall be paid into the children's trust fund as established in section 210.173, RSMo.

\* \* \* \* \* \*

§ *195.145.4.* The court shall render such judgment as to it seems meet and just, and;

(1) If it is determined that no person, other than the defendant, has an interest in the property, and if it is found by the court that the material allegations of the petition are true, the vehicle, vessel, or aircraft shall be declared to be forfeited to the state of Missouri, and the court shall order the officer who seized the property to sell the property at public or private sale, subject to the approval of the court, and out of the proceeds of the sale shall be paid the costs of storage, if any, the costs of the proceedings of the case, and the balance thereof shall be paid into the general revenue fund of the state of Missouri.

The details of the distributions ordered are not significant.[1]

This action was brought by a school district against the county commissioners of Lafayette County and the trustees of the statutory forfeiture proceeds in Lafayette County, claiming the proceeds previously ordered distributed to law enforcement agency. The plaintiff school district claims that it is entitled to a portion of the proceeds under Article IX, § 7, of the Missouri Constitution, reading as follows:

All real estate, loans, and investments now belonging to the various county and township school funds, except those invested as hereinafter provided, shall be liquidated without extension of time, and the proceeds thereof and the money on hand now belonging to said school funds of the several counties and the city of St. Louis, shall be reinvested in registered bonds of the United States, or in bonds of the state or in approved bonds of any city or school district thereof, or in bonds or other securities the payment of which are fully guaranteed by the United States, and sacredly preserved as a county school fund. Any county or the city of St. Louis by a majority vote of the qualified electors voting thereon may elect to distribute annually to its schools the proceeds of the liquidated school fund, at the time and in the manner prescribed by law. All interest accruing from investment of the county school fund, *the clear proceeds of all penalties, forfeitures and fines collected hereafter for any breach of the penal laws of the state, the net proceeds from the sale of estrays, and all other moneys coming into said funds shall be distributed annually to the schools of the several counties according to law.* (Emphasis supplied).

and that the statutory provisions purporting to authorize other distributions are unconstitutional. The trial judge denied the relief sought, relying primarily on *New Franklin School District No. 28 v. Bates,* 359 Mo. 1202, 225 S.W.2d 769 (1950).

---

1. The presence of this large bundle of cash has attracted great interest. A related matter was before us in *State ex rel. Lafayette County Comm'n v. Ravenhill,* 776 S.W.2d 17 (Mo. banc 1989). The case related to finality of judgments and is not pertinent here.

We are constrained to observe at the outset that the appellant's brief does not comply with Rule 84.04(c). The appellant seeks to adopt the findings, conclusion, and judgment of the trial court as its statement of facts. These may be quite adequate to present the issues, but are not ordinarily available to each member of the court prior to argument. So there is reason behind the requirement that the statement of facts be wholly set out in the brief. Because of the important public issues presented and the absence of factual disputes, however, we elect to decide the issues in the case. We conclude that the plaintiff's position is well taken, and reverse the judgment of the circuit court.

Article IX, § 7, has been in the Constitution for many years.[2] It states an unequivocal purpose of making the proceeds of "penalties, forfeitures and fines collected ... for any breach of the penal laws of the state ..." available for school purposes, and none other.

A series of cases, over the years, have dealt with legislative attempts to divert monies so collected to other uses. The courts have rejected these efforts. In *State ex rel. Rodes v. Warner*, 197 Mo. 650, 94 S.W. 962 (1906), this Court invalidated a statute providing that fines for violation of the conservation laws were to be paid to a "game protection fund," holding that the proceeds must be allocated exclusively for school purposes. The logical statutory purpose had to yield to the clear language of the constitutional mandate. To the same effect are *Skinner v. St. Louis, I.M. & S. R.R. Co.*, 254 Mo. 228, 162 S.W. 237 (1914), and *State v. Clifford*, 124 Mo. 492, 28 S.W. 5 (1894). Not in point are cases in which penalties go to the person suffering harm, *Barnett v. Atlantic and Pac. R.R. Co.*, 68 Mo. 56 (1878), and statutes authorizing payment to informers. *State ex rel. Clay Co. v. Wabash, S.L. & P.R. Co.*, 89 Mo. 562, 1 S.W. 130 (1886). But the cases consistently hold that sums payable to the state must go for school purposes, to the exclusion of other public agencies.

*Gross v. Gentry County*, 320 Mo. 332, 8 S.W.2d 887 (1928), dealt with a statute directing that "all fines and penalties imposed, and all forfeitures incurred ... shall be paid into the court's treasury ... for the benefit of the criminal cost fund ..." was in that respect violative of the predecessor of Art. IX, § 7. The Court held that the constitutional provision was "affirmative in its nature and direct in its term," and that it imposes a "mandatory declaration" which is "self-executing." The case involved claims of competing counties, which are not significant for present purposes. The ultimate disposition was to the school fund of one of the counties. The case was followed in *State v. Street*, 510 S.W.2d 225 (Mo.App.1974).

The trial court concluded, however, that the controlling authority is *New Franklin School District No. 28 v. Bates*, 359 Mo. 1202, 225 S.W.2d 769 (1950). The case is not applicable because it involves a fine levied by this Court in a proceeding in quo warranto against a group of insurance companies, as a sanction for usurpation of their corporate franchises.[3] The action did not arise under any penal law or, for that matter, under any statute. As the opinion explains, rather, the sanction was imposed by judicial authority for breach of the contract which is implied from the acceptance of corporate privileges. This is a procedure which was once common, but which has seldom been employed in recent years.[4] Under these circumstances, the foundation for a violation of Art. IX, § 7, simply was not present and, for want of other direction, the proceeds of the fines became a part of the general revenue fund of the state.

The respondents cite a recent decision of the Supreme Court of the United States, *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in an

---

**2.** *See* Const.1865 Art. IX, § 5; Const.1875 Art. XI, § 8.

**3.** *State ex rel. Taylor v. American Ins. Co.*, 355 Mo. 1053, 200 S.W.2d 1 (1946).

**4.** *Standard Oil Co. v. Missouri*, 224 U.S. 270, 32 S.Ct. 406, 56 L.Ed. 760 (1912); *State ex rel. McKittrick v. American Ins. Co.*, 346 Mo. 269, 140 S.W.2d 36 (1940).

attempt to persuade us that dire consequences would ensue if we were to hold that transportation of illegal controlled substances give rise to a penal forfeiture. It is suggested that this would constitute a prohibited double jeopardy. We do not agree. *Halper* involved an attempt to impose multiple civil penalties in fixed amounts in a medicare fraud case, in addition to criminal sanctions. The penalties had no relation to the harm done, and were designed solely as additional punishment. The court sensed a double jeopardy problem.

*Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), upholds the state's right to impose plural sanctions, holding that the question is one of legislative intent than of double jeopardy. The statutes here considered demonstrate clearly that the legislature intended that there be forfeiture of the means and proceeds of crime, as well as fine and imprisonment for those convicted. *Missouri v. Hunter* allows that intent to be given effect.

The forfeiture provisions in issue, though having their origin in penal statutes, are remedial and prophylactic. A drug operation is severely restricted if deprived of capital and locomotion. The forfeiture provisions, then, serve to inhibit further violations of the underlying penal statutes. Similar provisions have been enforced for years by the federal government regarding controlled substances,[5] moonshine whiskey,[6] and firearms.[7] We perceive no double jeopardy problem.

The drug statutes are manifestly penal laws in the sense of Art. IX, § 7. The forfeiture, though having a remedial purpose, arises out of violations of these penal statutes. It matters not that the forfeiture must be entered in a civil action, or that forfeiture may be decreed against a person who has not been convicted. There may be no judgment of forfeiture without due process of law, and the procedure is civil because it is not a part of the criminal proceeding. The plain language of Art. IX, § 7, allocates the net proceeds of forfeitures arising out of penal law violations to the schools.

If the reasoning of the dissent were to prevail, the legislature could easily frustrate and evade a long established constitutional policy by simply providing that penalties and forfeitures are recoverable only by means of civil actions.[8] The framers of the constitution used very broad language in order to make their policy clear. It is quite usual to provide for fines in criminal statutes, but a penalty, or a forfeiture, would not usually be decreed in a criminal proceeding. Nor does the constitution expressly require that there be a criminal conviction, if there has been a violation of the penal laws. The criminal might be dead or at large and there could still be forfeiture for violation of the penal laws. The dissent emphasizes procedure over substance. The constitutional article does not admit of the exceptions the dissent would make.

The judgment is reversed and the case is remanded for entry of a decree directing disposition of the funds in a manner consistent with this opinion.

ROBERTSON, HIGGINS, COVINGTON, and BILLINGS, JJ., concur.

HOLSTEIN, J., dissents in separate opinion filed.

RENDLEN, J., dissents and concurs in dissenting opinion of HOLSTEIN, J.

HOLSTEIN, Judge, dissenting.

I respectfully dissent.

---

5. *Caplin & Drysdale Chartered v. U.S.,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).

6. *Whiskey Cases,* 99 U.S. 594, 25 L.Ed. 399 (1878); *Ford v. U.S.,* 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927).

7. *U.S. v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989).

8. I fail to see how the case of *Mussallam v. Mussallam,* 321 N.C. 504, 364 S.E.2d 364, 367 (1988) supports the views expressed in the dissent. The holding there is that *both* civil and criminal forfeitures inure to the school fund.

I believe the majority goes beyond the plain and ordinary meaning of the constitutional language in construing the words "penal laws" to include civil proceedings under § 513.607, *et seq.*, RSMo 1986, and § 195.145.4, RSMo 1986. The words "penal laws," found in article IX, § 7 of the Missouri Constitution, have never been construed to have the broad meaning applied here. In general, the words refer to statutes that define criminal offenses and specify corresponding fines and punishment. *Black's Law Dictionary* 1133 (6th ed. 1979). Statutes of a civil nature declaring that certain moneys or property associated with criminal activity are subject to forfeiture and establishing a civil procedure for the forfeiture are not statutes imposing fines or imprisonment. No criminal charge need be filed, no person's guilt determined and no assessment of punishment imposed against an individual defendant to obtain the forfeiture. The term "penal laws," as used in the context of article IX, § 7, means laws that are punitive in nature, not remedial. *See Mussallam v. Mussallam,* 321 N.C. 504, 364 S.E.2d 364, 367 (1988) (construing language similar to that used in Missouri's Constitution). If, as the majority suggests, the forfeiture provisions were enacted for the remedial purpose of taking the profit out of crime and preventing the use of property to further criminal activities, it necessarily follows that these statutes are not penal laws.

The majority seems convinced by cases involving forfeitures under federal statutes that our construction of the state forfeiture statutes as "penal laws" will not give rise to problems of double jeopardy. I am not nearly so certain. If a defendant's property is forfeited under one penal law, may the defendant be tried and sentenced to jail under another penal law based on precisely the same set of facts? Ultimately, that question will not be answered by state courts but by federal courts. If those courts use our state determination that the forfeiture provisions are "penal" and not merely remedial in nature, they may conclude that double jeopardy prohibits the criminal prosecution. Stretching the concept of "penal laws" beyond its traditional limits is fraught with danger.

I would affirm.