**Dale ENSOR, in his official capacity as Treasurer of Lafayette County, Missouri, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent,**

No. 81605.

Supreme Court of Missouri, En Banc.

Aug. 31, 1999.

Rehearing Denied Sept. 21, 1999.

Terrence M. Messonnier, William Page Bellamy, Lexington, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Paul C. Wilson, Asst. Atty. Gen., Jefferson City, for Respondent.

MICHAEL A. WOLFF, Judge.

■ Forfeitures—proceeds of property seized by law enforcement authorities [1]— must be distributed to schools under the Missouri Constitution, article IX, section 7. The issue in this case is whether forfeiture proceeds can be assigned by statute to a statewide school building fund or whether the Constitution only permits a distribution of such proceeds to school districts in counties where the forfeitures occur.

In 1998, the General Assembly amended section 166.131 [2] to aggregate forfeiture

---

1.  Forfeiture means the divestiture of specific property without compensation, in consequence of some default or act forbidden by law, which imposes a loss by the taking away of some preexisting valid right without com-pensation. *See L & K Realty Co. v. R.W. Farmer Const. Co.,* 633 S.W.2d 274 (Mo.App. 1982); section 513.607, RSMo 1994.

2.  The references to the 1998 amendment are to RSMo Supp.1998. All other statutory ref-

proceeds from around the state into a "school building revolving fund" for allocation to individual school districts. Laws of Mo.1998, p. 475. Prior to this amendment, section 166.131 provided that proceeds from forfeitures (as well as penalties and fines for breaches of penal laws) were collected by the county treasurer, deposited in the county's school fund, and distributed to school districts in that county.

Appellant Dale Ensor, treasurer of Lafayette County, challenges the constitutionality of the 1998 amendment under article IX, section 7 of the Missouri Constitution. The circuit court for Cole County granted summary judgment in favor of the director of revenue, and Ensor's appeal is within our exclusive jurisdiction because Ensor challenges the constitutionality of the statute. Article V, section 3. We affirm.

■ Because of his pending challenge, Ensor has not sent Lafayette County's forfeiture proceeds of about $21, 000 (the amount as of January 1999) to the state school building revolving fund. None of the Lafayette County school districts would receive a net benefit from the forfeiture proceeds: under the current state school aid formula, the amount of forfeiture money (as well as locally collected fines and penalties) is deducted from each school district's annual state aid entitlement under section 163.031(6).[3]

■ A statute is presumed valid "unless it clearly contradicts a constitutional provision." *Asbury v. Lombardi*, 846 S.W.2d 196, 199 (Mo. banc 1993). Because of a statute's presumed validity we inquire as to whether the challenged provision is "clearly and undoubtedly" prohibited. *Hammerschmidt v. Boone County*, 877 S.W.2d 98, 102 (Mo. banc 1994).

Under the current constitutional provision, "the clear proceeds of all penalties, forfeitures and fines collected hereafter for any breach of the penal laws of the state, the net proceeds from the sale of estrays, and all other moneys coming into said funds shall be distributed annually to the schools of the several counties according to law."[4] Article IX, section 7. This section of the 1945 Constitution replaced the language of the 1875 Constitution providing that "the clear proceeds of all penalties and forfeitures, and of all fines collected in the several counties for any breach of the penal or military laws of the State...shall belong to, and be securely invested, and sacredly preserved in the several counties, as a county public school fund; the income of which fund shall be faithfully appropriated for establishing and maintaining free

erences are to RSMo 1994, unless indicated otherwise.

3. Each of the school districts in Lafayette County has an entitlement to state aid that exceeds the total amount of the deductions from the state aid entitlement that are mandated by statute, according to the public reports of the department of elementary and secondary education. Under the state aid formula in section 163.031(6), a district's state aid entitlement is reduced dollar-for-dollar for all of the forfeiture money that the district received in the preceding year.

4. Article IX, section 7 of the 1945 Constitution, in its entirety, reads: "All real estate, loans and investments now belonging to the various county and township funds, except those invested as hereinafter provided, shall be liquidated without extension of time, and the proceeds thereof and the money on hand now belonging to said school funds of the several counties and the city of St. Louis, shall be reinvested in registered bonds of the United States, or in bonds of the state or in approved bonds of any city or school district thereof, or in bonds or other securities the payment of which are fully guaranteed by the United States, and sacredly preserved as a county school fund. Any county or the city of St. Louis by a majority vote of the qualified electors voting thereon may elect to distribute annually to its schools the proceeds of the liquidated school fund, at the time and in the manner prescribed by law. All interest accruing from investment of the county school fund, the clear proceeds of all penalties, forfeitures and fines collected hereafter for any breach of the penal laws of the state, the net proceeds from the sale of estrays, and all other moneys coming into said funds shall be distributed annually to the schools of the several counties according to law."

public schools in the several counties of this State." Missouri Constitution article XI, section 8 (1875).[5]

■ Changes in the Constitution must be given effect and meaning. "(E)very word in a constitutional provision is assumed to have effect and meaning; their use is not surplusage." *Buechner v. Bond,* 650 S.W.2d 611, 613 (Mo. banc 1983).

Two important changes must be given effect between the 1875 Constitution and the current 1945 Constitution.

First, the 1875 constitutional requirement that "the clear proceeds of all...forfeitures...shall belong to, and be securely invested, and sacredly preserved in the several counties, as a county school fund" was deleted and not included in the 1945 constitutional provision.

The second important change is the addition of the words "according to law."

The first change we note in the 1945 Constitution is the deletion of the requirement that forfeitures shall belong to the county school funds. Undoubtedly, under the 1875 Constitution the forfeiture proceeds belonged to the county school fund as a matter of constitutional law. The current Constitution contains no requirement that forfeitures "shall belong to" or "be sacredly preserved in" the county school funds.[6]

The current version is consistent with the wide-ranging powers given the General Assembly in article IX of the Constitution to provide for funding of public education. The 1945 Constitution's changes are, as the director of revenue argues, consistent with the modern notion that Missouri has a state system of public education, not a federation of county systems. "No longer are schools administered as separate units," as this Court observed in *State ex rel. School District of Fulton v. Davis,* 361 Mo. 730, 236 S.W.2d 301, 304 (1951). "Each is a part of a cohesive whole. The properties of each school are vested in the State for the benefit of its entire citizenry." *Id.* at 305.

The second important change is the addition of the phrase "according to law." The 1875 constitutional provision relating to penalties, forfeitures, and fines was self-executing, that is, funds collected went to the county school fund and could be distributed annually as the constitutional provision directed without the need for legislative direction. *See Gross v. Gentry County,* 320 Mo. 332, 8 S.W.2d 887, 890 (1928). The current constitutional provision is not self-executing. Therefore it is subject to the statutory directives of the General Assembly because "according to law" is a phrase that contemplates the need for specific legislation to carry out the intent of the provision. *See, In Re V____,* 306 S.W.2d 461 (Mo.1957). Ensor cites a number of statutes passed after the adoption of the 1945 Constitution that directed forfeitures to be distributed as part of the county school fund, arguing that the statutes reflect a contemporaneous understanding of the meaning of the constitutional provision. *See,* SB 162, section

---

5. The 1875 Constitution, article XI, section 8, reads as follows: "All moneys, stocks, bonds, lands and other property belonging to a county school fund; also, the net proceeds from the sale of estrays; also the clear proceeds of all penalties and forfeitures, and of all fines collected in the several counties for any breach of the penal or military laws of the State and all moneys which shall be paid by persons as an equivalent for exemption from military duty, shall belong to, and be securely invested, and sacredly preserved in the several counties, as a county public school fund; the income of which fund shall be faithfully appropriated for establishing and maintaining free public schools in the several counties of this State."

6. At the Court's request, the parties filed suggestions as to the relevance of the 1944 debates of the Constitutional Convention on the interpretation of the change in these sections. The debates indicate that the delegates understood that they were making substantial changes in this provision, and it is impossible to infer that no changes were intended. *See, Debates of the Missouri Constitution 1945,* at pp. 2376–2404.

10376, Laws of Mo.1945, at p. 1628; section 171.010, RSMo 1959. But it is equally likely, and indeed more plausible, that after the constitutional change, which inserted the phrase "according to law," it became apparent that legislation was necessary in order to provide for the distribution of the proceeds of fines and forfeitures.

The General Assembly in the state aid formula statute, section 163.031, has redirected the forfeiture proceeds for many years indirectly by deducting dollar-for-dollar any locally received money for fines and forfeitures from a school district's entitlement for state aid.[7] The forfeiture proceeds are continuing to be a source of funding for school purposes but on a statewide basis. Ensor's reliance on *Reorganized School District No. 7 Lafayette County v. Douthit*, 799 S.W.2d 591 (Mo. banc 1990), and *Missouri Gaming Commission v. Missouri Veterans' Commission*, 951 S.W.2d 611 (Mo. banc 1997), is misplaced. In *Douthit*, this Court stated that article IX, section 7 has the "unequivocal purpose of making the proceeds of penalties, forfeitures, and fines collected...for any breach of the penal laws of the state...available *for school purposes,* and none other." 799 S.W.2d at 593 (emphasis added). In *Missouri Gaming Commission,* we held that moneys collected from penalties, forfeitures and fines and distributed to entities other than public schools would violate article IX, section 7. *See also,* 951 S.W.2d 611 at 614. (Holstein, J., concurring). Those cases do not address the issue in this case, and they are consistent with our holding here. The General Assembly's decision to allocate forfeiture proceeds to a school building revolving fund is within its constitutional prerogative to distribute such proceeds "according to law."

We have noted two important changes between the 1945 and 1875 Constitutions. Appellant Ensor also relies upon a phrase that appears in both constitutional provisions, "the several counties." He contends that the intent of the 1945 Constitution was a change in how county school funds were to be invested and maintained, not a change in how ultimately they are to be distributed. He asserts that the constitutional provision, even with the changes we have discussed above, requires the county to maintain a county school fund with the proceeds staying in the county in which they originate. However, appellant Ensor does frankly acknowledge that the phrase is ambiguous. In the context of the 1875 constitutional language the section as a whole refers to individual counties. However, in context, the 1945 section is not so limited, and we adhere to the plain meaning of the phrase.

Ensor correctly concedes that if "several counties" means more than one county, then section 166.131, as amended in 1998, is "probably constitutional." Ensor directs this Court to the United States Constitution, other states' constitutions, as well as two dictionaries, on the meaning of "the several counties" to suggest that the phrase should be given a meaning other than its plain meaning. A plain and natural meaning of the term, the "several counties" means all or more than one of the counties of the state. Thus, while no particular school district has any exclusive right to any forfeiture proceeds, it is clear that these proceeds must be made available generally to the states' schools for education purposes. *See, Reorganized School District No. 7 Lafayette County v. Douthit, supra,* 799 S.W.2d 591, 593; *Missouri Gaming Commission v. Missouri Veterans' Commission, supra,* 951 S.W.2d

7. The General Assembly directed the deduction of forfeiture funds from school districts' state aid at least since 1977 in the school aid formula passed that year and codified as section 163.031.5(2), RSMo Supp.1977. The 1977 school aid formula provided that 57 percent of the amount received in the previous year as forfeitures was to be deducted from the "minimum guarantee" of state aid for each district. In the 1993 revision of that section, 100 percent of forfeitures (as well as fines and penalties) received in the previous year are deducted from the district's state aid entitlement. Section 163.031.6.

611, 614 (Holstein, J., concurring). When the forfeiture proceeds are assigned by the General Assembly "according to law" to the school building revolving fund, they remain dedicated to the purpose of educating children, and the amendment to section 166.131 neither changes this purpose nor violates the Constitution.

Finally, we should note that Treasurer Ensor does not challenge distribution, by loans, from the school building revolving fund. His challenge is confined to an attack on the diversion of funds from the county to the state. Thus, we are not presented, and do not address, the question of whether loans to qualifying school districts from the school building revolving fund are consistent with the constitutional provision. This issue is raised in an *amicus curiae* brief and is discussed in appellant Ensor's brief, but the point is not properly presented in this appeal.[8]

For the foregoing reasons, we uphold the validity of section 166.131 as it relates to the deposit of funds to the school building revolving fund, and affirm the judgment of the trial court.

All concur.

---

8. The sole point presented in this appeal is stated as follows:

"The trial court erred in entering judgment for the Defendant and in denying Plaintiff's Motion for Summary Judgment because the provision of House Bill 1265 directing that the proceeds of forfeitures go to the state school building revolving fund violates article IX, Section 7 of the Missouri Constitution in that article IX, Section 7 dictates that the proceeds of forfeitures must go to the local County School Fund." (App.Br. p. 10).