CITY OF ARNOLD, Appellant,

v.

Homer TOURKAKIS, et
al., Respondents.

No. SC 88647.

Supreme Court of Missouri,
En Banc.

March 18, 2008.

Rehearing Denied April 29, 2008.

Tracy Hunsaker Gilroy, Michael A. Wolff, Michael F. Barnes, Robert D. Vieth, Jovita M. Foster, Armstron Teasdale, LLP, David P. Abernathy, John F. Medler, Jr., Kenneth C. Jones, St. Louis, William C. Dodson, Imperial, Marc B. Fried, Dennis J. Kehm, Jr., Office of the County Counselor, Hillsboro, for Respondents.

Howard C. Wright, Jr., Springfield, Amicus Curiae for Missouri Municipal League, et al.

Jennifer Z. Roland, David E. Roland, St Louis Amicus Curiae for Show–Me Institute.

Marc H. Ellinger, Jefferson City, Amicus Curiae for National Federation of Independent Business Legal Foundation.

Robert W. Gall, William H. Mellor, Scott Bullock, Arlington, VA, Paul A. Martin, St. Louis, Ronald J. Eisenberg, Chesterfield, Counsel for the Institute for Justice and The Office of the Ombudsman for Property Rights.

MARY R. RUSSELL, Judge.

The question in this case is whether the City of Arnold ("the City"), a non-charter city, is authorized to exercise the power of eminent domain. This Court holds that article VI, section 21 of the Missouri constitution and relevant statutes permit the City to do so. The judgment of the trial court is reversed, and the case is remanded.[1]

Gerard T. Carmody, Kelley F. Farrell, Kameron W. Murphy, JoAnn T. Sandifer, St. Louis, Robert K. Sweeney, Hillsboro, for Appellant

Timothy S. Sandefur, James S. Burling, Pacific Legal Foundation, Sacramento, CA,

Homer and Julie Tourkakis ("Landowners") own a residential building located in Arnold that was converted into a dentist's office. The Arnold City Council adopted ordinances declaring Landowners' property and the surrounding area to be blighted

---

1. Because the court below believed that Arnold had no authority to exercise the power of eminent domain, it did not reach the issues of whether the real estate in this case is blighted, whether there was a private taking for a private use, whether the taking was for a public purpose, or whether eminent domain is good or bad for the state. Those issues, therefore, are not before this Court, and this Court expresses no opinion as to them.

pursuant to the Missouri Real Property Tax Increment Allocation Redevelopment Act ("TIF Act") and approved a redevelopment plan for the area. The City then began acquiring properties in the redevelopment area. After Landowners refused to sell their property, the City sought to acquire it by eminent domain. The City, a third class city, filed a petition stating that it was exercising its power of eminent domain under section 99.820, RSMo 2000,[2] a part of the TIF Act, as well as other statutes.[3] Landowners moved to dismiss the City's action, arguing that since the City was a non-charter city, it lacked the authority to use eminent domain for redevelopment purposes and that any statute granting such power violated article VI, section 21 of the Missouri constitution. They allege the constitutional provision only permits constitutional charter cities and counties to utilize eminent domain to condemn property to eliminate blight and effectuate redevelopment plans.

After briefing and oral argument, the trial court dismissed the City's condemnation petition with prejudice, finding that the City did not have the power to exercise eminent domain to condemn blighted property. Specifically, the trial court stated it did "not believe that the Missouri Constitution allows a taking [of private property through eminent domain] by the City." It further held that "the [City] lacks constitutional authority to take the property of defendants under Chapter 99 and that to the extent Chapter 99 is inconsistent with Article 6, Section 21 of the Constitution of 1945, it is declared unconstitutional." The City now appeals. Since this action involves the validity of state statutes, this Court has exclusive jurisdiction over this appeal. Mo. CONST. art. V, sec. 3.

## I. Standard of Review

The standard of review for constitutional challenges to a statute is *de novo*. *Hodges v. City of St. Louis*, 217 S.W.3d 278, 279 (Mo. banc 2007). Likewise, this Court reviews a trial court's interpretation of the Missouri constitution *de novo*. *StopAquila.org v. City of Peculiar*, 208 S.W.3d 895, 899 (Mo. banc 2006). A statute is presumed to be valid and will not be declared unconstitutional unless it clearly contravenes some constitutional provision. *Doe v. Phillips*, 194 S.W.3d 833, 841 (Mo. banc 2006).

## II. Validity of the TIF Act

The City asserts that the trial court erred in dismissing its condemnation action in that condemnation is authorized under the TIF Act because it allows the City to condemn property for the redevelopment of blighted areas. Additionally, the City contends that article VI, section 21 of the Missouri constitution confirms, rather than limits, the legislature's inherent power to authorize the use of eminent domain for the clearance of blighted areas. The City also argues that chapter 99 is not unconstitutional because it is not inconsistent with article VI, section 21.

The legislature has the right to authorize the exercise of the sovereign power of eminent domain. *Bd. of Regents for Ne. Mo. State Teachers Coll. v. Palmer*, 356 Mo. 946, 204 S.W.2d 291, 294 (1947). Unless restricted by the constitution, the power is unlimited and practically absolute. *State ex inf. Danforth v. State*

---

2. The current version of the statute is found in RSMo Cum. Supp. 2007. All further statutory references in this opinion are to RSMo Cum. Supp. 2007, unless otherwise indicated.

3. These statutes provide a framework for third class cities to acquire property by condemnation for public purposes.

*Envtl. Improvement Auth.,* 518 S.W.2d 68, 72 (Mo. banc 1975).

The TIF Act, enacted in 1982, allows urban renewal of blighted areas by permitting tax abatements to be used for the redevelopment of these areas. It is codified within chapter 99 and authorizes "municipalities" to utilize eminent domain to take private property to facilitate redevelopment.[4]

Municipalities, under the TIF Act, are permitted to adopt a redevelopment plan for areas that are blighted and to use eminent domain to acquire property within the redevelopment area. Sections 99.805(1); 99.810.1(1), RSMo 2000. The utilization of eminent domain, however, is "subject to any constitutional limitations." Section 99.820.1(3). The trial court found that such a constitutional limitation existed under article VI, section 21 of the Missouri constitution.

Article VI, section 21 of the Missouri constitution provides:

> **Laws may be enacted, and any city or county operating under a constitutional charter may enact ordinances,** providing for the clearance, replanning, reconstruction, redevelopment and rehabilitation of blighted, substandard or insanitary areas, and for recreational and other facilities incidental or appurtenant thereto, and for taking or permitting the taking, by eminent domain, of property for such purposes, and when so taken the fee simple title to the property shall vest in the owner, who may sell or otherwise dispose of the property subject to such restrictions as may be deemed in the public interest.
>
> (emphasis added).

▮ In interpreting this provision, it is first necessary to distinguish between constitutional charter cities and non-charter cities. A constitutional charter city derives its power from article VI, section 19(a) of the state constitution, which grants it all the power the legislature could grant. *Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208, 210 (Mo. banc 1986). Article VI, section 19(a) of the state constitution states, in part,

> Any city which adopts or has adopted a charter for its own government, [sic] shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute.

▮ A non-charter city, such as Arnold, derives its power from the legislature's enactment of laws. *See St. Louis County v. Univ. City,* 491 S.W.2d 497, 499 (Mo. banc 1973). It has no inherent power of eminent domain, but rather only those powers granted to it by the constitution or statutes. *See In re Armory Site in Kansas City,* 282 S.W.2d 464, 466 (Mo.1955).

Article VI, section 21 sets forth two sources of authorization to empower cities to use eminent domain in implementing plans for redeveloping blighted areas. The phrase "Laws may be enacted" indicates that the legislature has the authority to pass statutes to allow non-charter cities to utilize eminent domain to eliminate blighted areas. The conjunctive provision "and any city or county operating under a constitutional charter may enact ordinances" permits political subdivisions operating under a constitutional charter to use their inherent authority to enact ordinances and condemn property without the

---

4. A municipality is statutorily defined as a city, village, incorporated town, or any county in this state established at least one year prior to December 23, 1997. Section 99.805(8).

necessity of statutory authorization. *See* Mo. CONST. art. VI, sec. 19(a).

 If article VI, section 21 were intended to limit the power of eminent domain to only charter cities and counties, the phrase "Laws may be enacted" would be surplusage. *See Ensor v. Dir. of Revenue*, 998 S.W.2d 782, 784 (Mo. banc 1999) ("Every word in a constitutional provision is assumed to have effect and meaning; their use is not surplusage." (quoting *Buechner v. Bond*, 650 S.W.2d 611, 613 (Mo. banc 1983))). The usage of that phrase indicates that the General Assembly also has the power to provide eminent domain authority to non-constitutional charter cities. Arnold, as a non-charter city, derives its authority to utilize eminent domain from statutes, including the TIF Act. The plain and unambiguous meaning of article VI, section 21 does not place any limits on legislative enactments for non-charter cities or on the enactment of ordinances by charter cities to exercise eminent domain.[5]

 The trial court erred finding that article VI, section 21 limits the entities that may exercise the power of eminent domain for redevelopment purposes and in dismissing the City's condemnation action. The City is authorized under several statutes, including the TIF Act, to exercise eminent domain. For these reasons, the trial court erred in finding chapter 99 unconstitutional in that it is not inconsistent with article IV, section 21 of the Missouri constitution. The judgment of the trial court is reversed, and the case is remanded.

STITH, C.J., LIMBAUGH, WOLFF, and BRECKENRIDGE, JJ., and WELSH, Sp.J., concur.

---

5. If the words at issue are plain and unambiguous, constitutional construction is not required. *St. Louis Univ. v. Masonic Temple*

TEITELMAN, J., dissents in separate opinion filed.

PRICE, J., not participating.

RICHARD B. TEITELMAN, Judge, dissenting.

I respectfully dissent. The majority concludes that article VI, section 21 authorizes the legislature to delegate the power of eminent domain to third-class cities and that the TIF act is such a delegation. I disagree with both conclusions and would affirm the circuit court's judgment.

Article VI, section 21 of the Missouri Constitution distinguishes between charter cities and non-charter cities. Charter cities are authorized to enact ordinances for the exercise of eminent domain powers for redevelopment. Non-charter cities are not authorized to enact such ordinances. However, article VI, section 21 provides that with respect to non-charter cities, "laws may be enacted" that provide for the exercise of eminent domain for redevelopment purposes. Article VI, section 21 does not expressly authorize the wholesale delegation of such power to third-class cities. Instead, it provides only that the legislature may enact a law allowing the use of eminent domain for a redevelopment project. In this case, the General Assembly has enacted no law authorizing the City of Arnold to exercise the power of eminent domain for redevelopment purposes.

Even if article VI, section 21 is construed as permitting the legislature to delegate to third-class cities the power to employ eminent domain as part of a redevelopment project, it does not follow that

*Ass'n of St. Louis*, 220 S.W.3d 721, 726 (Mo. banc 2007).

the TIF act constitutes such a delegation. Cities, towns, and villages do not possess the right of eminent domain absent an express delegation of such power from the state. *State ex rel. Schwab v. Riley*, 417 S.W.2d 1, 3 (Mo. banc 1967). Statutes delegating the right of eminent domain to municipalities are strictly construed because the exercise of eminent domain divests individuals of the constitutionally protected right to private property. *See, e.g., Centene Plaza Redevelopment Corp. v. Mint Properties*, 225 S.W.3d 431, 434–35 (Mo. banc 2007) (strictly construing definition of "blighted" area under section 353.020 to require findings regarding the health, safety, and welfare impacts of a project in addition to the economic benefits).

A strict construction of the TIF act reveals no express delegation of the power of eminent domain to third-class cities that supports the conclusion that the "City is authorized under several statutes, including the TIF Act, to exercise eminent domain." Although section 99.820.1(3) establishes extensive and specific procedures for financing redevelopment projects, it provides absolutely no procedures by which third-class cities may exercise the power of eminent domain as part of a redevelopment project. The TIF act also fails to make any reference to the general eminent domain law, chapter 523, *et seq.*, or to section 88.497, which authorizes third-class cities to use eminent domain for specific purposes. This lack of any expressly delegated statutory mechanism for the use of eminent domain by third-class cities indicates that the act was not intended to empower third-class cities to appropriate private property as part of a redevelopment project. That being the case, the most logical conclusion is that in passing the TIF act, the legislature assumed that cities seeking to exercise eminent domain as part of a redevelopment project would proceed under the eminent domain powers already granted by applicable eminent domain statutes. Because non-charter cities have no authority outside the TIF act to use eminent domain for redevelopment, a strict construction of the statute counsels a finding that the TIF act does not delegate an expanded power of eminent domain to third-class cities.

I would affirm the judgment.